919 A.2d 1223

Stephen N. ABRAMS

v.

Linda H. LAMONE, et al.

No. 142, Sept. Term, 2005.

Court of Appeals of Maryland.

March 26, 2007.

148

Stephen N. Abrams, Rockville, for appellant.

Andrew M. Dansicker (Joshua R. Treem of Schulman, Treem, Kaminkow, Gilden & Ravenell, P.A., Baltimore), on brief, for appellees.

William F. Brockman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore), on brief, for appellees.

Argued before BELL, C.J., RAKER, WILNER,* CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

Plurality Opinion by BELL, C.J., which WILNER and CATHELL, JJ., join.

This case is the first of two pertaining to the eligibility requirements of a candidate for the office of the Attorney General of Maryland.[1] The genesis of this case was the attempt by Mr. Thomas E. Perez ("Perez"), an attorney and law professor, one of the appellees, to run for the office of the

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The second case pertaining to the eligibility requirements of a candidate for the office of the Attorney General is *Liddy v. Lamone*, 398 Md. 233, 919 A.2d 1276, 2007 WL 924152 (2007).

Attorney General of Maryland in the 2006 Gubernatorial Primary Election. Article V, Section 4 of the Maryland Constitution prescribes the qualifications for that office. It provides:

> "No person shall be eligible to the office of Attorney–General, who is not a citizen of this State, and a qualified voter therein, and has not resided and *practiced Law in this State for at least ten years.*"

■ MD CONST. art. V, § 4 (emphasis added). Today, we address whether a combination of membership in the Maryland Bar for five years, fewer than the ten years prescribed, and the practice of law for more than ten years, much of it being done at the federal level, suffices to meet the constitutional requirements of Article V, Section 4.[2] In analyzing past and present bar admission requirements of this State, the historical role of the Attorney General, and other Constitutional provisions which were in existence at the time of Article V, Section 4's adoption, we shall hold that a candidate for the office of the Attorney General must be a member of the *Maryland* Bar for at least ten years and must be a practitioner of law in *Maryland* for an identical requisite period.

## I.

Perez announced his candidacy for the office of the Attorney General on May 23, 2006. Before doing so, recognizing that there was a potential question as to his eligibility, i.e. the sufficiency of his professional credentials, to serve as Attorney General, in a letter dated May 8, 2006 and "in the continued spirit of thoroughness and due diligence . . . as to whether [he] met the eligibility requirements of [Article V,] Section 4 of the Maryland Constitution,"[3] he requested an advisory opin-

---

**2.** There is no dispute that Perez is "a citizen of this State" and "a qualified voter," who has "resided . . . in this State for at least ten years." The only issue before us is whether Perez has "practiced Law in this State for at least ten years."

**3.** Perez's letter to the office of the Attorney General, and the Attorney General's subsequent opinion, which related to its own office, raise a

ion from the office of the Attorney General.[4] In that letter, Perez related his career, as follows.

After graduating from Harvard Law School in 1987, Perez was admitted to the New York Bar in 1988 and clerked for a federal judge in Colorado until 1989. He moved to Maryland after the clerkship and accepted a position with the United States Department of Justice ("DOJ"), through its Attorney General's Honors Program. He remained in that position, performing various functions within the Department, until 1999.

In his first position, as a federal prosecutor in the Criminal Section of the Civil Rights Division, which he held from 1989 to 1994, and which was based in the District of Columbia headquarters of the Department, Perez investigated and prosecuted criminal civil rights cases nationwide. In that capacity, he was "responsible for directing the investigation of the case, discussing the matter with the local Assistant United States Attorney, FBI agent or other investigator, making a determination of whether a case merited prosecution, and then prosecuting the case, if [it] merited prosecution." Some of the cases on his docket were Maryland cases.

In 1994, Perez was promoted to the Deputy Chief of the Section. His responsibilities in that position included supervising all cases that occurred in Maryland. This required him to consult with "any attorney in the Section desiring to pursue an investigation or prosecution in Maryland[.]" He also reviewed briefs and discussed strategies with the attorneys he supervised.

In 1995, while remaining a DOJ employee, Perez was detailed from the Civil Rights Division to the minority staff of the Senate Judiciary Committee on a fluctuating basis, i.e. he worked in both positions, staying, on an alternating basis, a

---

potential conflict of interest. This issue, however, has not been presented and, therefore, we will not address it.

4. Perez later filed an affidavit, dated July 25, 2006, with the Circuit Court for Anne Arundel County in which he reiterated his professional qualifications for the office of the Attorney General.

few months in each. While with the Judiciary Committee, Perez worked on various bills that had widespread impact in areas such as juvenile crime, immigration, and civil rights.

In 1998, Perez was appointed the Deputy Assistant Attorney General for the Civil Rights Division, one of the four highest ranking positions in the Division. In that position, he oversaw the Criminal, Education, and Employment Sections, which entailed roughly 30% of all litigation activities within the Division. Several of the cases had a geographic anchor in Maryland.

In 1999, Perez left the Justice Department and became the Director of the Office for Civil Rights at the U.S. Department of Health and Human Services. In that capacity, Perez "led a 220 person agency whose mission was to enforce civil rights laws in the health and human service context across the country," acting as a "legal strategist, case supervisor, manager, and policy maker." His nationwide caseload included cases from Maryland involving Title VI of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. None of the Maryland cases involved litigation.

Perez left federal service in January, 2001. He joined the faculty of the University of Maryland School of Law as an Assistant Professor of Law and Director of Clinical Law Programs in April 2001. Also in that year, Perez took the Maryland lawyer's bar examination and was admitted to practice in Maryland.[5]

As Director of Clinical Law Programs, Perez supervised students who handled real cases and were permitted to appear in court pursuant to Maryland's student practice rule (Rule 16).[6] He supervised those programs from 2001 until 2003.

---

**5.** Rule 13(d) of the Rules Governing Admission to the Bar of Maryland, which requires prior practice experience "for a total of ten years, or at least five of the ten years immediately prior to the filing of the [admission] petition," governs who is eligible to take the lawyer's examination.

**6.** Rule 16 of the Rules Governing Admission to the Bar of Maryland (2007) provides, as relevant:

When, in 2003, Perez was elected to the Montgomery County Council, he resigned his position of Clinic Director, although he remained a member of the faculty. Perez recently was promoted from Assistant Professor of Law to Associate Professor of Law.

Based on the information provided by Perez,[7] the Attorney General, on May 19, 2006, issued an opinion, 91 *Opinions of the Attorney General* 99 (2006), concluding that Perez was qualified to hold the office of the Attorney General. Attorney General Curran reasoned:

> "While the State Constitution explicitly requires that a candidate for Attorney General have practiced law in the State for 10 years and implicitly requires that the candidate be admitted to the State bar, it neither explicitly nor

"Legal assistance by law students.

 * * *

"(b) *Eligibility.* A law student enrolled in a clinical program is eligible to engage in the practice of law as provided in this Rule if the student:

"(1) is enrolled in a law school;

"(2) has read and is familiar with the Maryland Lawyers' Rules of Professional Conduct and the relevant Maryland Rules of Procedure; and

"(3) has been certified in accordance with section (c) of this Rule.

 * * *

"(d) *Practice.* In connection with a clinical program, a law student for whom a certificate is in effect may appear in any trial court or the Court of Special Appeals or otherwise engage in the practice of law in Maryland provided that the supervising attorney (1) is satisfied that the student is competent to perform the duties assigned, (2) assumes responsibility for the quality of the student's work, (3) directs and assists the student to the extent necessary, in the supervising attorney's professional judgment, to ensure that the student's participation is effective on behalf of the client the student represents, and (4) accompanies the student when the student appears in court or before an administrative agency. The law student shall neither ask for nor receive personal compensation of any kind for service rendered under this Rule."

7. Attorney General Curran cautioned, "[b]ecause an Attorney General opinion is not a vehicle for investigating or determining facts, we base our analysis solely on the information that you [Perez] have provided about your background." 91 *Opinions of the Attorney General* at 100, n. 1.

implicitly requires that a candidate have accumulated all of that experience while a member of the State bar. Practice in Maryland authorized by federal and State law counts toward the durational experience requirement in the Maryland Constitution, even if that work was performed while the attorney was not a member of the Maryland bar."
*Id.* at 116.

Relying on this opinion, Perez, as we have seen, announced his candidacy for the office of the Attorney General and, on June 19, 2006, formally registered his candidacy with the State Board of Elections ("the State Board"). By filing, pursuant to § 5–301(a)(1)[8] of the Election Law Article, a certificate of candidacy, he certified, under oath,[9] that, among other things, he was "a registered voter and a citizen of Maryland and [met] all other [constitutional] requirements for the . . . office [of the Attorney General]." The State Board accepted Perez's certificate and, pursuant to § 5–601(1)[10] of the Election Law Article, placed his name on the ballot for the 2006 Primary Election.

---

**8.** Maryland Code (2003, 2006 Cum.Supp.) § 5–301(a) of the Election Law Article provides:

"In general
"(a) *In general.* An individual may become a candidate for a public or party office only if:
"(1) *the individual files a certificate of candidacy in accordance with this subtitle;* and ⸺⸺⸺⸺
"(2) the individual does not file a certificate of withdrawal under Subtitle 5 of this title." (Emphasis added).

**9.** *See* Maryland Code (2003, 2006 Cum.Supp.) § 5–302(a) of the Election Law Article, which provides:

"On form
"(a) A certificate of candidacy shall be filed under oath on the prescribed form."

**10.** Maryland Code (2003, 2006 Cum.Supp.) § 5–601(a) of the Election Law Article provides:

"The name of a candidate shall remain on the ballot and be submitted to the voters at a primary election if:
"(1) the candidate has filed a certificate of candidacy in accordance with the requirements of § 5–301 of this title and has satisfied any other requirements of this article relating to the office which the individual is a candidate, provided the candidate:"

On July 13, 2006, Mr. Stephen N. Abrams ("Abrams"), the appellant, a registered voter in Maryland and a Republican candidate for the office of Comptroller of Maryland,[11] filed, in the Circuit Court for Anne Arundel County, an action pursuant to §§ 9–209(b)[12] and 12–202(b)[13] of the Election Law

"(i) has not withdrawn the candidacy in accordance with Subtitle 5 of this title;
"(ii) has not died or become disqualified, and that fact is known to the applicable board by the deadline prescribed in § 5–504(b) of this title;
"(iii) does not seek nomination by petition pursuant to the provisions of § 5–703 of this title; or
"(iv) is not a write-in candidate."

11. While there was a contention that Abrams did not have standing to bring this action since he was a Republican candidate for Comptroller and, thus, not eligible to vote in the Democratic Primary Election, that issue was not raised during trial. We, therefore, decline to address it.

12. Maryland Code (2003, 2006 Cum.Supp.) § 9–209 of the Election Law Article provides:
"§ 9–209. *Judicial review*
"Timing
"(a) Within 3 days after the content and arrangement of the ballots are placed on public display under § 9–207 of this subtitle, a registered voter may seek judicial review of the content and arrangement, or to correct any other error, by filing a sworn petition with the circuit court for the county.
"Relief that may be granted
"(b) The circuit court may require the local board to:
"(1) correct an error;
"(2) show cause why an error should not be corrected; or
"(3) *take any other action required to provide appropriate relief.*
"Errors discovered after printing
"(c) If an error is discovered after the ballots have been printed, and the local board fails to correct the error, a registered voter may seek judicial review not later than the second Monday preceding the election." (Emphasis added).

13. Maryland Code (2003, 2006 Cum.Supp.) § 12–202 of the Election Law Article provides:
"§ 12–202. *Judicial challenges*
"(a) *In general.* If no other timely and adequate remedy is provided by this article, a *registered voter may seek judicial relief from any act or omission relating to an election,* whether or not the election has been held, on the grounds that the act or omission:
"(1) is inconsistent with this article or other law applicable to the elections process; and

Article, seeking declaratory and injunctive relief against Perez, Ms. Linda H. Lamone ("Lamone"), in her official capacity as the State Administrator of Elections, and the State Board, collectively, "the appellees." [14] Abrams sought an order declaring that Perez did not have the qualifications required for the office of the Attorney General, an injunction requiring Perez to withdraw his certificate of candidacy, and an injunction prohibiting Lamone and the State Board from placing Perez's name on the ballot for Attorney General. He argued that, under § 5–301(b) [15] of the Election Law Article, it was the State Board's duty to determine whether Perez met all of the qualifications prescribed by the election laws, including constitutional requirements as to his eligibility to run for, and,

---

"(2) may change or has changed the outcome of the election.
"Place and time of filing
"(b) *A registered voter may seek judicial relief under this section in the appropriate circuit court within the earlier of:*
"(1) *10 days after the act or omission or the date the act or omission became known to the petitioner; or*
"(2) 7 days after the election results are certified, unless the election was a gubernatorial primary or special primary election, in which case 3 days after the election results are certified." (Emphasis added).

14. In addition to his Complaint, Abrams filed, on the same date, a Motion for Temporary Restraining Order in an attempt, once again, to prohibit Lamone and the State Board from placing Perez's name on the ballot. The Circuit Court for Anne Arundel County denied Abrams' Motion for a Temporary Restraining Order, but believing that the Complaint raised substantial and important issues on the merits, necessitating a full adversary hearing, entered an Order to Shorten Time to Respond, in which the defendants were given five 5 days to respond to Abrams' Complaint.

15. Maryland Code (2003, 2006 Cum.Supp.) § 5–301(b) of the Election Law Article provides:
"Determination by state board or local board
"(b) The appropriate board shall determine whether an individual filing a certificate of candidacy meets the requirements of this article, including:
"(1) the voter registration and party affiliation requirements under Subtitle 2 of this title; and
"(2) the campaign finance reporting requirements under Title 13 of this article."

thus, to hold the office of the Attorney General.[16]

---

**16.** Abrams, in his brief in this Court, asked:

"Does the State Board of Elections have any duty to inquire into the representations made by a candidate for any office in Maryland when the candidate certifies under oath to the State Board of Elections that he or she meets the Maryland Constitutional requirements?"

He did not further address this point *at all* in the brief, however. Instead, he focused primarily on the eligibility requirements of Article V, § 4 of the Maryland Constitution, arguing that Perez did not meet them. The appellant simply did not address in his brief the issue of the Board's duty to inquire into a candidate's qualifications for the office for which that candidate files. Accordingly, we decline to address the issue. *See Oak Crest Village, Inc. v. Murphy*, 379 Md. 229, 241, 841 A.2d 816, 824 (2004) ("An appellant is required to articulate and adequately argue all issues the appellant desires the appellate court to consider in the appellant's initial brief"); *DiPino v. Davis*, 354 Md. 18, 56, 729 A.2d 354, 374 (1999) ("[I]f a point germane to the appeal is not adequately raised in a party's brief, the [appellate] court may, and ordinarily should, decline to address it"); *Ritchie v. Donnelly*, 324 Md. 344, 375, 597 A.2d 432, 447 (1991) (holding an appellate court, in its "discretion", need not "consider[ ] the arguments" that are not made in an appellant's brief); *Health Serv. Cost Rev. v. Lutheran Hosp.*, 298 Md. 651, 664, 472 A.2d 55, 61 (1984) ("[A] question not presented or argued in an appellant's brief is not properly preserved for review"). *See also* Maryland Rule 8–504(a)(5), which mandates that:

"[a] brief shall comply with the requirements of Rule 8–112 and include the following items in the order listed:

\* \* \*

"(5) Argument in support of the party's position."

In the Circuit Court, Abrams argued that whether Perez is qualified to run for the office of the Attorney General is a matter of statutory interpretation, rather than one for determination by administrative decision of the Attorney General. Relying on the Code of Maryland Regulations 33.01.02.01, Abrams further argued that Perez, as a person considering candidacy, should have petitioned the State Board, not the Attorney General, to resolve any questions Perez may have had pertaining to his qualification for the office of the Attorney General. The Code of Maryland Regulations 33.01.02.01 provides:

"Petition Authorized

"An interested person may petition the State Board for a declaratory ruling on the manner in which the Board would apply any of the following to a person or property on the facts set forth in the petition:

"A. A Board regulation;

"B. Board order; or

"C. statute that the Board enforces."

The Circuit Court declined to address the issue of the propriety of the Attorney General's opinion stating that it "is somewhat of a side issue . . . whether it should have happened or could have happened differently or whatever, this is not necessarily imputed by the Board."

The appellees, defendants below, responded by filing dispositive motions. Perez filed a Motion to Dismiss and/or Motion for Summary Judgment, principally on the ground that he met the qualifications prescribed by Article V, § 4 of the Maryland Constitution. Lamone and the State Board filed a Motion to Dismiss and to Expedite Scheduling. They contended that Abrams' action was barred by the applicable statute of limitations and by laches and that their sole interest in the action was in ensuring an orderly administration of the election process, the deadlines of which would be jeopardized if the action were not adjudicated expeditiously. The Circuit Court held a hearing on the motions, at the conclusion of which it issued its oral opinion.

The Circuit Court first addressed the issue of the timeliness of the appellant's action under § 12–202(b) of the Election Law Article.[17] The court rejected the appellees' argument that the relevant "act or omission" in the case *sub judice* was Perez's filing of his certificate of candidacy, which occurred on June 19, 2006, and their contention that the appellant should have known about that filing earlier. Instead, the Circuit Court concluded that the operative and critical date and, therefore, the relevant, statutory determinant was July 3, 2006, the filing deadline.[18] It explained, "to the extent that

---

**17.** As mentioned earlier, the appellant's Complaint was also filed pursuant to § 9–209(b) of the Election Law Article. The Circuit Court found that this ground did not apply, a finding that the appellant is not challenging.

**18.** The appellees, including Perez, who preferred to have the issue resolved on the merits, pressed their contention that Abrams waited too long to file this action under § 12–202, prompting a lengthy discussion in the Circuit Court on the point. They argued that Abrams should have known that Perez had filed to run for Attorney General. Citing, *e.g.*, *Could Technicality Boot Montgomery Official from Attorney General Race?* Washington Post, May 7, 2006. at C4; *Perez OK'd in Race for Attorney General*, Baltimore Sun, May 20, 2006, at 5B; *AG Opinion Finds Perez Candidacy Constitutional*, The Gazette, May 19, 2006; *Perez is Eligible to Run for Attorney General*, Washington Post, May 20, 2006, at B 10, they noted that the occasion was highly publicized. The appellees further argued that Abrams had a duty to remain informed about the election, and he failed so to do. Moreover, they asserted, he

there may have been errors ... [the filing deadline] is sort of the closing bell, if you will...." There was, in the court's opinion, no other more reliable measure of the appellant's knowledge than the filing deadline itself, when the appellant would be charged with knowledge of Perez's candidacy. Because, the court ruled, the appellant's motion was filed on July 13, 2006, within ten days of the filing deadline, it was within the period prescribed for filing for judicial review, and, therefore, timely.

The Circuit Court also was not persuaded by the laches argument advanced by Lamone and the State Board. Noting that laches would apply "if the claimant neglected to prosecute the matter in such a way that it cause[d]—as a result of [the]

---

should be precluded from claiming that he had no knowledge of what was transpiring merely because he was on vacation, particularly with technological advances, such as the Internet, at his disposal.

Abrams countered by testifying that he did not have personal knowledge of Perez's formal filing until after he returned from a three-week vacation and checked the State Board's website on July, 5, 2006. He submitted that it was then that he "knew" that Perez had filed. Moreover, he claimed that no major newspaper in the area where he was vacationing reported that Perez had formally filed his certificate of candidacy and that the State Board's website was the best place for him to ascertain who was running. He contended, however, that he did not check the website until after the actual filing deadline because he was not interested in finding out who "may" have been in the race as there was the possibility that candidates could withdraw at anytime before the close of the filing deadline. Abrams contended that he was only interested in the final list of candidates.

We agree, on this point, with the appellees. Section 12–202 of the Election Law Article must be interpreted in a reasonable, but practical manner. A reasonable interpretation would place an obligation on a registered voter seeking to challenge the qualifications of a candidate to keep informed as to the relevant acts and omissions of that candidate. A voter may not simply bury his or her head in the sand and, thereby, avoid the triggering of the 10–day statutory time period, prescribed by § 12–202, in which to "seek judicial review from any act or omission relating to an election." The State Board's website, along with media coverage, would have been the principal places from which Abrams would have been able to find information pertaining to Perez's candidacy. It was incumbent upon Abrams to avail himself of these sources. Being on vacation is not an adequate, or even good, excuse for not being informed, as being on vacation did not bar him from utilizing these sources to keep informed.

passage of time ... the adversary to be prejudiced," it was satisfied that the appellant was not, in any way, dilatory in his actions [19] and, thus, that the State Board was not prejudiced. Accordingly, the Circuit Court denied the motion to dismiss for laches.

The Circuit Court, finally, addressed the constitutional issue of Perez's eligibility to hold the office of the Attorney General, pursuant to Article V, § 4. Believing the question to be whether Perez has "practiced Law in this State for at least ten years," more specifically: "[d]o you have to be a Maryland Bar member for at least 10 years because only a Maryland Bar member can practice law in the State of Maryland?," the Circuit Court answered, "no." It reasoned, relying on *Kennedy v. Bar Ass'n of Montgomery County*, 316 Md. 646, 561 A.2d 200 (1989), *Attorney Grievance Comm'n v. Bridges*, 360 Md. 489, 759 A.2d 233 (2000) and *In the Matter of R.G.S.*, 312 Md. 626, 637, 541 A.2d 977, 982 (1988), that one "can practice law in the State of Maryland without being a member of the Maryland Bar" and that Perez's federal practice does, indeed,

---

**19.** On this point, the court opined:

"Now I certainly understand that ... everything involving the electoral process is on a very very tight time line. And I recognize that every day that passes creates the potential for greater problems and greater expense to the State Board. However, in large part those timing issues are not triggered by anything that Mr. Abrams did or didn't do in this case. I mean the fact of the matter is that there is just a whole lot of stuff that needs to get done and a relatively short time to do it ... I think within the context of this case and given the complicated nature of the issues and so forth, what he did was certainly within reason."

Neither Lamone nor the State Board filed a cross-appeal challenging these adverse rulings. Thus, they are not before us on this appeal. *See Joseph H. Munson Company, Inc. v. Secretary of State*, 294 Md. 160, 168, 448 A.2d 935, 940 (1982) ("[A party], not having filed an order of appeal, may not on appeal attack the trial court's declaratory judgment"). *See also Id.*, 448 A.2d at 939, *citing Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221, 1223 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980) (holding an appellate court will address an issue sua sponte, even if not raised by the appellee, "under the principle that a judgment will ordinarily be affirmed on any ground adequately shown by the record, whether or not relied on by the trial court or raised by a party").

satisfy the "practiced Law" requirement under Article V, § 4. *Kennedy,* it stated, stood for the proposition that one "can have essentially a federal practice in the State of Maryland even if [one] is not a member of the Maryland Bar," while *Bridges,* citing, with approval, *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), recognized an attorney's right to maintain a legal practice restricted to the federal courts prior to admission to that state's bar. The Circuit Court concluded, as to *R.G.S.:*

> "I also find it significant that the Court of Appeals in that case cited with approval an Attorney General's opinion, '68 opinion.[20] And cited among other things the provision of that opinion that recognized that the phrase such as 'practice of law' may mean different things in different contexts and specifically as used in Article 5, Section 4 of the Constitution relating to the qualifications for the Office of the AG, the phrase ... 'means something quite different and less restricted than the meaning of the phrase 'practice of law' for the purpose of Rule 14 or any unauthorized practice."

The Circuit Court also observed that "the plain language [of Article V, § 4] says absolutely nothing about being a member of the bar because frankly that had a whole different import back in that day than it may have now." Recalling the history of bar admissions in Maryland, the Circuit Court noted that there was no formal, state—wide bar admission process until 1898,[21] that, at the time, there was no "federal law" as we know it today, and despite the fact that the framers of the

---

**20.** *See* 68 *Opinions of the Attorney General* 48 (1983).

**21.** The current procedures for admitting attorneys in this State have their origin in Chapter 139, 1898 Laws of Maryland, the enactment of which placed bar admissions in this Court's exclusive jurisdiction. Chapter 139 provided:

> *"All applications for admission to the bar in this State shall be made by petition to the Court of Appeals.* A State Board of Law Examiners is hereby created to consist of three members of the bar of at least ten years' standing, who shall be appointed by the Court of Appeals, and shall hold office for the term of three years....All applications for admission to the bar shall be referred by the Court of Appeals to the

Maryland Constitution could not have contemplated a situation in which the phrase "practiced Law in this State" could have meant something other than what they intended it to mean—the practice of state law in Maryland, the Circuit Court concluded:

> "[T]he plain language ... leads ... to the inescapable conclusion that it [the phrase "practiced Law in this State for at least ten years"] simply requires that someone have practiced for at least ten years in the State of Maryland, but that [it is] not tantamount to being a member of the Maryland Bar ... [and] that as a factual matter he [Perez] has practiced law. That as a legal matter that practice occurred in Maryland. And accordingly that under Section 4 of Article 5 of the Maryland Constitution he is eligible to stand for election as Attorney General."

The court thus granted Perez's Motion for Summary Judgment and denied the appellant's cross-motion. In response to that ruling, the appellant noted an appeal both to this Court, pursuant to § 12–203(a) [22] of the Election Law Article, and to the Court of Special Appeals. In addition, he filed, in this

---

State Board of Law Examiners, who shall examine the applicant, touching his qualifications for admission to the bar. The said board shall report their proceedings in the examination of applicants to the Court of Appeals with any recommendations said board may desire to make. *If the Court of Appeals shall then find the applicant to be qualified to discharge the duties of an attorney, and to be of good moral character and worthy to be admitted, they shall pass an order admitting him to practice in all the courts of the State."*
Chapter 139, Acts of 1898 (ratified April 14, 1898) (emphasis added).

**22.** Maryland Code (2003, 2006 Cum.Supp.) § 12–203(a) of the Election Law Article provides:
"(a) *In general.* A proceeding under this subtitle shall be conducted in accordance with the Maryland Rules, except that:
"(1) the proceeding shall be heard and decided without a jury and as expeditiously as the circumstances require;
"(2) on the request of a party or sua sponte, the chief administrative judge of the circuit court may assign the case to a three-judge panel of circuit court judges; and
"(3) *an appeal shall be taken directly to the Court of Appeals within 5 days of the date of the decision of the circuit court."*
(Emphasis added).

Court, a Petition for Writ of Certiorari, which this Court granted. *Abrams v. Lamone,* 393 Md. 478, 903 A.2d 417 (2006). Oral argument was heard on August 25, 2006, and, on that same day, the Court issued its Order reversing the judgment of the Circuit Court. We now set forth the reasons for that Order.

## II.

When the framers of the Maryland Constitution assembled in 1774 to formulate a response to the Boston Port Act,[23] they did not contemplate that just two short years later they would meet again, this time to produce a Constitution, a document that would govern the citizens of the State of Maryland. The office of the Attorney General[24] was established by constitutional provision at the 1776 Maryland Convention. Section 48 of the 1776 Maryland Constitution provided, as relevant:

> *"That the governor, for the time being, with the advice and consent of the council, may appoint the chancellor, and all judges and justices, the attorney general,* naval officers, officers in the regular land and sea service, officers of the

---

**23.** The Boston Port Act, one of the measures variously called the Intolerable Acts, enacted by the British Parliament on March 31, 1774, was "[a]n act to discontinue, in such manner, and for such time as are therein mentioned, the landing and discharging, lading or shipping, of goods, wares, and merchandise, at the town, and within the harbour, of Boston, in the province of Massachuset's, in North America." Its enactment was in response to Boston protesters throwing 342 chests of tea over board into the Boston Harbor during the Boston Tea Party. The protestors were billed for the tea that was destroyed, and the Harbor was ultimately closed. 14 Geo. III. c. 19 (1774).

**24.** Although the office was established here in Maryland in 1776, the office of the Attorney General, or the Attornatus Regis or King's Attorney, has its origins in English Law and dates back as far as the 13th century, or perhaps even earlier as it is unclear as to exactly when the office was originally started. *See generally, e.g.,* Hugh Bellot, The *Origin of the Attorney–General,* 25 L.Q. Rev. 400 (1909); W.S. Holdsworth, *The Early History of the Attorney and Solicitor General,* 13 Ill. L.Rev. 602 (1919). *See also State v. Burning Tree Club, Inc.,* 301 Md. 9, 26–32, 481 A.2d 785, 794–97 (1984); *Murphy v. Yates,* 276 Md. 475, 480–88, 348 A.2d 837, 840–44 (1975); *Hawkins v. State,* 81 Md. 306, 32 A. 278 (1895).

militia, registers of the land office, surveyors, and all other civil officers of government ... and may also suspend or remove any civil officer who has not a commission during good behaviour. . . ." (Emphasis added).

The office of the Attorney General was later abolished by Constitutional amendment [25] proposed in 1816, Chapter 247, Acts of 1816, and ratified, February 5, 1817.[26] It was re-established in 1818, pursuant to Chapter 146, Acts of 1817.[27] In 1821, the constitutional provision pertaining to the Attorney

---

**25.** The mode of Constitutional amendment has changed over time. The original mode of amending the Constitution was that amendments were to be made by an Act of Assembly passed at one session and a confirmatory Act at the next. *See* MD CONST. 1776 sec. 59. With the adoption of the 1851 Constitution, all Constitutional amendments were to be made by Conventions, which were elected for that purpose. The sense of the people w as taken every ten years, following the returns of every census, in regard to calling a Convention for altering the Constitution. *See* MD CONST. 1850 art. XI. The process changed once again with the adoption of the 1864 Constitution, whereby amendments could be proposed by the General Assembly as long as three-fifths of all the members elected to both houses agreed. The sense of the people was still taken, albeit every twenty years, in regard to calling a Convention. *See* MD CON ST. 1864 art. XI. The process has substantially remained the same since its adoption in 1864. *See* MD CON ST. 1867 art. XIV; MD CONST. art. XIV. *See also* 1941 Laws of Maryland, ch. 337, rejected Nov. 3, 1942; 1943 Laws of Maryland, ch. 476, ratified Nov. 7, 1944; 1972 Laws of Maryland, ch. 367, ratified Nov. 7, 1972; 1977 Laws of Maryland, 679, ratified Nov. 7, 1978; 1978 Laws of Maryland, ch. 975, ratified Nov. 7, 1978.

**26.** Chapter 247 provided, as relevant:
"An act to alter and change all and every part of the Constitution and Form of Government as relates to the Attorney General.
"Sec. 1. Be it enacted by the General Assembly of Maryland, That all and every part of the constitution and form of government of this state, which relates to the attorney general, be *and the same is hereby abrogated, annulled, and made void.*
"2. And be it enacted, That the duties and services, now provided by law to he done and performed by the attorney general, shall be done and performed *by such persons, and in such manner, as the general assembly of Maryland shall hereafter direct.*"
Chapter 247, Acts of 1816 (ratified Feb. 5, 1817) (emphasis added).

**27.** Chapter 146 provided, as relevant:
"An act providing for the appointment of an Attorney General, and of District Attorneys, in the several Judicial Districts of this State, and for Baltimore City Court.

General was repealed and reenacted. ·*See* Chapter 126, Acts of 1821 (ratified Jan. 7, 1822). Although very similar to the previous provision pertaining to the office. of. the Attorney General, the amendment, as proposed and ratified, outlined the duties of the Attorney General in greater detail and provided for the appointment of deputies, providing:

> *"[T]he governor shall nominate, and by and with the advice and consent of the council, appoint and commission a person of sound legal knowledge, who shall be styled attorney general of Maryland,* and who previous to, and during his acting as such, shall reside in this state; and it shall be the duty of the said attorney general, to prosecute and defend on the part of the state, all cases now depending, or which may hereafter be brought in, or removed to *any of the counties of this state by or against the state, or wherein the state shall or may be interested, in the same manner,* as the attorney general heretofore was accustomed to do or could do; and he shall have, exercise and use all and every the powers and authorities in and relating to the same, as the attorney general heretofore had used and exercised, or can have, use and exercise in similar cases; and he shall give his opinion and advice whenever he shall be required by the general assembly, or either branch thereof, by the

---

"Sec. 1. Be it enacted by the General Assembly of Maryland, *That there shall be appointed and commissioned a person of sound legal knowledge, who shall be styled Attorney General of Maryland,* and who, previous to and during his acting as·such, shall reside in the state, and whose duty it shall be to prosecute and defend, on the part of the state, all cases now depending, or which may hereafter be brought in, or removed to, the court of appeals for the Western or eastern shore, by or against the state, or wherein the state shall or may be interested, in the· same manner that the attorney general heretofore was accustomed to do, or could do; and he shall have, exercise and use, all and every the powers and authorities in and rotating to the same, as the attorney general heretofore had, used and exercised, or can have, use and exercise, in similar cases, and he shall give his opinion and advice whenever he shall be required by the general assembly, or either branch thereof, by the governor and council, or by the treasurer of either shore, on any matter or subject depending before them, or where the interest of the state may require.

Chapter 146, Acts of 1817 (ratified Feb. 7, 1818) (emphasis added).

governor and council, or by the treasurer of the Eastern and Western Shore, or any deputy he may appoint, on any matter or subject depending before them." (Emphasis added).

That provision remained unchanged for the next 30 years, until 1851, when, as a result of the Constitutional Convention of 1850,[28] the office of the Attorney General once again was abolished.[29] According to Article V, § 3 of the 1850 Constitution, the Attorney General's duties were to be discharged by the state's attorney in each county and in Baltimore City.[30] It provided, as pertinent, that "[t]he State's Attorney shall perform the duties and receive such fees and commissions as are now prescribed by law for the Attorney General and his Deputies."

The office of the Attorney General was not reestablished as part of the Maryland Constitution until 1864 when, for the

---

28. Pursuant to Chapter 346, Acts of 1849, which was ratified February 21, 1850, the General Assembly proposed to Maryland voters the calling of a convention to frame a new constitution. The Act was entitled, "An act to provide for the taking upon the expediency of calling a Convention to frame a new Constitution and Form of Government for this State, and to provide for the election of Delegates to such Convention." Maryland voters approved the convention, and, in November 1850, the elected delegates met to frame a new Maryland Constitution.

29. Article III, § 32 of the 1850 Maryland Constitution provided that "[n]o law shall be passed creating the office of the Attorney General." MD. CONST. 1850 art. III, § 32.

30. There was much deliberation at the Constitutional Convention of 1850 as to whether the office of the Attorney General should be abolished. There were a number of reasons for the suggestion; however, the main reason seemed to have been due to financial circumstances. *See Debates and Proceedings of the Maryland Reform Convention to Revise the State Constitution* ("Debates I"), Vol. II, 9 (Annapolis, 1851) (Delegate Thomas Dorsey of Anne Arundel County "suggested that it would be a great saving to the State, for each attorney to transact the business with which he was familiar. After he had prepared himself to argue a case in the county court, he would be prepared to argue it before the court of appeals. No compensation would therefore be required for these examination of the same case by another attorney"). *See also Debates I* at Vol. I, 519–550 (providing a detailed discussion of the abolition of the office of the Attorney General).

first time in Maryland history, it was made an elective office.[31] Moreover, Article V of the 1864 Constitution, captioned, "Attorney General and State's Attorney," provided a detailed statement of the duties of the office of the Attorney General, Article V, § 3, and, although prior provisions had required residency and, by implication, suggested that a candidate for Attorney General be skilled in the legal practice, as the duties included prosecuting and defending cases involving the State or in which the State had an interest, for the first time, the qualifications for the position were articulated.[32]

Article V, § 4 of the 1864 Constitution provided:

"No person shall be eligible to the office of attorney general who has not resided and *practiced law in this State for at least seven years next preceding his election.*" (Emphasis added).

The Maryland Constitution was revised once again, just three years later.[33] Although the essence of Article V, § 4

---

**31.** Article V, § 1 of the 1864 Maryland Constitution provided:

"There shall be an Attorney General *elected by the qualified voters of the State,* on general ticket, on the Tuesday next after the first Monday in the month of November, in the year eighteen hundred and sixty four, and on the same day in every fourth year thereafter, who shall hold his office for four years from the first Monday of January next ensuing his election, and until his successor shall be elected and qualified, and shall be re-eligible thereto, and shall be subject to removal for incompetency, willful neglect of duty, or misdemeanor in office, on conviction in a Court of Law."

MD. CONST. 1864 art. V, § 1 (emphasis added).

**32.** Although the eligibility requirements for the Attorney General were first articulated in the 1864 Constitution, those pertaining to the State's Attorney and judicial candidates were already in place and could be found in its predecessor, the Constitution of 1850. The eligibility requirements for these other positions were, thus, clearly, considered by the framers in their adoption of Article V, § 4.

**33.** The 1867 Constitution is still Maryland's Constitution. Although it has been amended in some particulars, on the subject of the office of the Attorney General, it has remained unamended. That is not to say that it has, during this period, always been viewed as adequate. Believing the 1867 Constitution to be "very restrictive to the successful operation of an efficient state government and entirely too clumsy and ineffective as a document of basic law," *see Report of the Constitutional*

remained the same, the new provision changed the length of both the residency and practice of law requirements from seven to ten years, the length it has remained to this day. Article V, § 4 of the 1867 Constitution provided:

"No person shall be eligible to the office of Attorney–General, who is not a citizen of this State, and a qualified voter therein, and has not resided and *practiced Law in this State for at least ten years.*"

MD. CON ST. 1867 art. V, § 4 (emphasis added).

### III.

The appellant asserts that the Circuit Court erred in applying a broad interpretation of Article V, § 4, to find Perez eligible to hold the office of the Attorney General. He first argues, as he did below, that, under the canons of constitutional interpretation there can be only one reading of the phrase "practiced Law in this State for at least ten years." That is so, the appellant submits, because the phrase is clear and unambiguous; in order to be eligible to "practice Law in this State," one necessarily must be admitted to the bar of the State. In sum, the appellant argues that Perez could not have been practicing law in Maryland when he was not admitted to its bar, because to have done so, he would have had to, in effect, engage in the unauthorized practice of law. The appellant, moreover, contends that the phrase should not only be given its plain, ordinary meaning but should not be liberally construed to mean anything else.

---

*Convention Commission* (Annapolis: Constitutional Convention Commission, 1967) at vii; *See Rasin v. Leaverton*, 181 Md. 91, 96, 28 A.2d 612, 614 (1942) ("[T]he constitution of 1867 does not always possess the consistency that the argument supposes"), Governor J. Millard Tawes appointed a commission to study the document in an effort to determine whether a new constitution was needed. The commission proposed that a convention be held in order to revise the document as a whole, *see* Chapter 500, Acts of 1996. *See also* Chapter 4, Acts of 1967 (providing for the appointment and election of delegates), and in 1967, the fifth constitutional convention convened. The constitution resulting from the deliberations of that convention failed ratification in a referendum held on May 14, 1968, however.

The appellant next argues, alternatively, that, if Article V, § 4 is ambiguous, resort to its legislative history supports his contention that the framers intended the office to be held by a person admitted to the bar of the State. The historical role of the Attorney General, coupled with essential principles of bar admission in this State, confirm his position, he proffers. He asserts, further, that the 1867 Constitution, with its enumeration of the prerequisites for holding the office of the Attorney General, was clearly understood to pertain to a person admitted to practice in Maryland and, when considered in connection with the duties of the office it prescribes, to one who, due to experience, was competent to hold the office. Thus, he concludes, Article V, § 3,[34] which outlined the duties of the

---

34. As originally adopted, Article V, Section 3 of the Maryland Constitution governed the duties of the Attorney General and provided:

"It shall be the duty of the Attorney General to prosecute and defend, on the part of the State, all cases which at the time of his election and qualification, and which thereafter may be depending *in the Court of Appeals,* or in the Supreme Court of the United States, by or against the State, or wherein the State may be interested; and he shall give his opinion in writing whenever required by the General Assembly, or either branch thereof; the Governor; the Comptroller; the Treasurer; or any State's Attorney on any matter or subject depending before them; or either of them, and when required by the Governor or the General Assembly, he shall aid any State's Attorney in prosecuting any suit, or action brought by the State, in any Court of this State; and he shall commence and prosecute or defend any suit, or action, in any of said Courts, on the part of the State, which the General Assembly or the Governor acting according to law, shall direct to be commenced, prosecuted, or defended, and he shall receive for his services an annual salary of twenty-five hundred dollars; but he shall not be entitled to receive any fees, perquisites, or rewards, whatever, in addition on to the salary aforesaid, for the performance of any official duty, *nor have power to appoint any agent, representative, or deputy, under any circumstances whatever.*"

MD. CONST. 1864 art. V, §. 3 (emphasis added).

As the office of the Attorney General evolved and expanded, it became evident that the Attorney General could not attend to all of the State's legal affairs personally, as originally contemplated and required by the position. Consequently, the Constitution was amended to address the issue. *See* Chapter 663, Laws of Maryland 1912. The provision, as proposed to the voters, and ratified, in pertinent part, provided:

"It shall be the duty of the Attorney-General to prosecute and defend on the part of the State all cases, which at the time of his appointment and qualification and which thereafter may be depending in the

Attorney General, was explicit in its requirement that the Attorney General had to discharge all of the duties prescribed therein *personally.* It is logical, then, the appellant argues, that the General Assembly contemplated that the Attorney General be a member of the Maryland Bar, as such membership would have permitted him to appear in the courts of the State.

Moreover, the appellant argues that the framers of the Constitution were precise in their choice of language. Looking at other provisions of the Constitution, *i.e.* Article V, § 10 and Article IV, § 2, pertaining respectively to the eligibility requirements for State's Attorney and judicial candidates, he emphasizes the difference in the language of the provisions. In both latter instances, the provision specifies expressly bar membership as a prerequisite to running for, and holding, the office. In the case of the office of the Attorney General, however, instead of an express reference to bar membership, the provision specifies the practice of law in this State for a specified period of time. This, the appellant says, supports his position. The framers, he asserts, did not omit a bar admission requirement at all; rather, they understood that such a requirement necessarily is subsumed in the phrase, "practiced Law."

---

Court of Appeals, or in the Supreme Court of the United States, by or against the State, or wherein the State may be interested; and he shall give his opinion in writing whenever required by the General Assembly or either branch thereof, the Governor, the Comptroller of t he Treasury, o r any State's Attorney, on any legal matter or subject depending before them or either of them; and when required by the Governor or General Assembly he shall aid any State's Attorney in prosecuting any suit or action brought by the State in any Court of the State, and he shall commence and prosecute or defend any suit or action in any of said Courts, on the part of the State, which the General Assembly or the Governor, acting according to law, shall direct to be commenced, prosecuted or defended, and he shall have and perform such other duties and shall appoint such number of deputies or assistants as the General Assembly may from time to time by law prescribe[.]"
Chapter 663, Acts of 1912 (ratified November 8, 1913) (emphasis added).

Finally, the appellant denies that Perez's federal bar membership, and, ultimately, his practice of law as an official in the Justice Department and a member of the Maryland federal bar, even if done physically in Maryland, meet the eligibility requirements of Article V, § 4 and, therefore, makes him eligible to be Maryland's Attorney General. Federal and state bar memberships are two very distinct privileges, he posits. Thus, the appellant urges that Perez can not be said to have practiced law in Maryland, within the contemplation of the constitutional provision, at least not until he became a member of the Maryland Bar in 2001. In sum, it is the appellant's position that being a Justice Department official authorized to protect the interests of the United States throughout the country and, in that capacity and for that purpose, to appear in the state courts of Maryland, or being a member of the bar of the United States District Court for the District of Maryland does not authorize an individual not admitted to the bar of the Court of Appeals of Maryland to practice law in Maryland in the sense intended by Article V, § 4, the Supremacy Clause notwithstanding.

## IV.

### A.

Although Article V, § 4 has been considered in other contexts,[35] the disputed question presented for our resolution, the meaning of "practiced Law in this State for at least ten years" has not been decided previously by this Court.

■ The general tenets of constitutional interpretation are well settled and frequently stated. "Generally speaking, the same rules that are applicable to the construction of statutory language are employed in interpreting constitutional ver-

---

**35.** *See, e.g., Crosse v. Board of Supervisors of Elections,* 243 Md. 555, 561, 221 A.2d 431, 435 (1966) (briefly observing that the Attorney General must be a "qualified voter"); 68 *Opinions of the Attorney General* 342 (1983) (discussing the "at least ten years" timing aspect of the eligibility requirement); 68 *Opinions of the Attorney General* 48 (discussing the "practice of law" aspect of the eligibility requirement).

biage[.]" *Brown v. Brown,* 287 Md. 273, 277, 412 A.2d 396, 398 (1980). *See also Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 81 (2004) ("When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language"); *Fish Market Nominee Corp. v. G.A.A., Inc.,* 337 Md. 1, 8, 650 A.2d 705, 708 (1994) ("Generally, we apply the same principles in construing constitutional provisions as we apply in construing statutory provisions"); *New Central Coal Co. v. George's Creek Coal & Iron Co.,* 37 Md. 537, 557 (1873) ("There can be no good reason suggested why this same general principle [for the construction of statutes], so wise and just, should not also apply as a rule of interpretation of the Constitution").

We stated the general rule in *Brown:*

"[I]t is axiomatic that the words used in the enactment should be given the construction that effectuates the intent of its framers ... such intent is first sought from the terminology used in the provision, with each word being given *its ordinary and popularly understood meaning* ... and, if the words are not ambiguous, the inquiry is terminated...."

287 Md. at 277–78, 412 A.2d at 398–99 (citations omitted and emphasis added). *See also Davis,* 383 Md. 599 at 604, 861 A.2d 78 at 81 ("[T]o ascertain the meaning of a constitutional provision ... we first look to the normal, plain meaning of the language"); *Fish Market Nominee Corp.,* 337 Md. 1 at 8, 650 A.2d 705 at 708 ("[W]e generally construe the provision to effectuate the clear meaning expressed by its words"); *Rand v. Rand,* 280 Md. 508, 511, 374 A.2d 900, 902 (1977) ("To ascertain the mandate of a constitutional [provision], we look first to the 'natural and ordinary signification' of its language"), *quoting Balto. Gas & Elect. Co. v. Board of County Comm'rs of Calvert County,* 278 Md. 26, 31, 358 A.2d, 241, 244 (1976).

We have further stated that "[w]here 'the words of an [enactment], construed according to their common and everyday meaning, are clear and unambiguous and express a plain

meaning,' [the Court] 'will give effect to the [enactment] as it is written.' " *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557, 566 (2003), *quoting Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07. *See also Bienkowski v. Brooks,* 386 Md. 516, 536, 873 A.2d 1122, 1135 (2005) ("If th[e] language is clear and unambiguous, we need not look beyond the provision's terms ....."), *quoting Davis,* 383 Md. at 604–05, 861 A.2d at 81; *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) ("If there is no ambiguity ... the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent, external rules of construction"). Thus, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). *See also Condon v. State of Maryland–University of Maryland,* 332 Md. 481, 491, 632 A.2d 753, 758 (1993) ("[w]here the language is clear and unambiguous, a court may not add or delete words to make a statute reflect an intent not evidenced in that language, ... [a] clearly worded statute must be construed without 'forced or subtle interpretations' that limit or extend its application"), *quoting Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986) (citations omitted).

We, thus, begin our analysis by looking at the plain language of Article V, § 4 to determine what it means to have "practiced law in this State for at least ten years." Although this Court has generally refused to adopt a precise definition of the term "practice law," *see In re Application of Mark W.,* 303 Md. 1, 6–9, 491 A.2d 576, 578–81 (1985) (recognizing that in determining whether a state bar applicant's activities constitute the "practice of law" ... "the more practical approach is to consider each state of facts and determine whether it falls within the fair intendment of the term"), *quoting Grievance Committee v. Payne,* 128 Conn. 325, 22 A.2d 623, 625 (1941), we read "practiced law in this State for at least ten years," as used in Article V, § 4, to mean that one who seeks to hold the

office of the Attorney General must have practiced law for ten years, in Maryland, as a member of the Maryland Bar.

The practice requirement, we hold, relates not solely to the practice of law in Maryland, but to its practice in Maryland as a member of the Maryland Bar. This is consistent with "the context within which [the language of this constitutional provision] was adopted," *Motor Vehicle Administration v. Mohler*, 318 Md. 219, 225, 567 A.2d 929, 932 (1990), quoting *Rucker v. Comptroller of Treasury*, 315 Md. 559, 565, 555 A.2d 1060, 1063 (1989), and comes from reading it as a whole. *Kushell v. Dep't of Natural Resources*, 385 Md. 563, 577, 870 A.2d, 186, 193 (2005) ("The plain language of a [constitutional] provision is not interpreted in isolation. Rather, [the Court] analyze[s] the provision as a whole"); *Blondell v. Baltimore City Police Dep't*, 341 Md. 680, 691, 672 A.2d 639, 645 (1996) (noting that the Court construes a constitutional provision as a whole, interpreting each part of the provision in context); *Outmezguine v. State*, 335 Md. 20, 41, 641 A.2d 870, 880–81 (1994) (asserting that a constitutional provision can not be viewed in isolation, but rather must be analyzed as a whole); *Wheeler v. State*, 281 Md. 593, 596, 380 A.2d 1052, 1055 (1977) ("All parts of a [constitutional provision] are to be read together to find the intention as to any one part").

Moreover, we decline to give the provision, and specifically the phrase at issue, a different meaning "on such theories that a different meaning would make [it] more workable, or more consistent with a litigant's view of good public policy, or more in tune with modern times, or [on the theory] that the framers of the provision did not actually mean what they wrote." *Bienkowski*, 386 Md. at 537, 873 A.2d at 1134. *See, e.g., Montrose Christian School v. Walsh*, 363 Md. 565, 595, 770 A.2d 111, 129 (2001) (The "phrase ... clearly does not mean what is suggested....We decline to construe 'purely' as if it were 'primarily' or 'some' "); *Davis v. State*, 294 Md. 370, 378, 451 A.2d 107, 111 (1982) (refusing to construe the phrase "his religious beliefs" in favor of the petitioner's view, as such an action would be tantamount to re-drafting the statute under

the guise of construction); *Mauzy v. Hornbeck,* 285 Md. 84, 93, 400 A.2d 1091, 1096 (1979) (declining to construe the phrase "all professional employees" as "only certain types of" professional employees).

On this point, we agree with the appellant. There can be no meaning attached to this phrase, as used in the context of Article V, § 4, other than that practicing law in Maryland requires admission to the bar of this State. The practice of law in Maryland and Maryland bar admission are coterminous; one follows from and, indeed, is dependent on the other. This has long been the case in this State. The first formal bar admission in Maryland took place in 1666 when William Calvert, Daniel Jenifer, and John Morecroft were accepted to practice by the Provincial Court. That court, formed in 1637 and consisting of the Governor and his council, was the highest court of common law in the colony, having both original and appellate jurisdiction. *See, e.g.,* J. Hall Pleasants, Ed. "Early Maryland County Courts" *Proceedings of the County Court of Charles County,* 1658–1666 (Baltimore, 1936) at xliii ("In the Provincial Court, beginning in the sixties, are to be found a few 'sworn attorneys' of the court,' men trained in their profession, who were formally admitted to practice, and enrolled as such in the court records"). *See generally* Act of April, 1715, ch. 48, §§ 12, 13 (Maxcy ed., vol. 1, p. 132 (1811)) which provided, as relevant:

"AND BE IT FURTHER ENACTED, *by the authority advice and consent aforesaid,* That from and after the end of this present session of assembly, *no attorney, or other person whatsoever, shall practise the law in any 'of the courts of this province, without being admitted thereto by the justices of the several courts,* who are hereby empowered to admit and suspend them (*salvo jure coronae* ) until his majesty's pleasure shall be known therein ... PROVIDED ALWAYS, That nothing in this act shall extend, or b e construed to extend, to give right to any courts of this province to admit any attorney, or other person practising the law, to practise in any court that has been already refused so to do by his

excellency, and his majesty's honourable council...." (Emphasis added).

This State has had formal state—wide bar admission requirements dating back to the early 19th century. On March 10, 1833, the General Assembly enacted Laws of Maryland, Chapter 268 entitled "An act regulating the admission of Attorneys to practice law in the several Courts of this state." Chapter 268 provided, as relevant:

"WHEREAS, under the existing laws of this state, it is in the power of the several courts of law and equity, to regulate the admission of attorneys according to their discretion, by which different rules prevail in different courts; and it is proper and right, that the mode and terms of admission should be uniform throughout this state:—Therefore,

Section 1. Be it enacted by the General Assembly of Maryland, That all applications for admission as attorney, to practice the law in this state, *shall be made to some one of the county courts, courts of equity or courts of appeals thereof in open court.*

Sec. 2. And be it enacted, That upon every such application for admission to practice law as aforesaid ... it shall be the duty of the court to whom such application shall be made, to examine said applicant upon some day during the regular session thereof, touching his qualification for admission as an attorney, and they shall also require and receive evidence of his probity and general character, and if upon such actual examination, and being satisfied that he has been a student of law, at least two years as aforesaid, and having heard evidence as to his probity and general character, the said court shall be of opinion that said applicant is qualified to discharge the duties of an attorney and worthy to be admitted, they shall admit him.

Sec. 3. And be it enacted, That upon the admission of any applicant to practice law in any of the courts of record in this state as aforesaid, it shall be the duty of the court so admitting him, to certify the same with their own proper

signatures, which certificate shall be recorded, and a copy thereof authenticated with the county seal of the county in which the party shall be admitted, shall be available and *sufficient to entitle said applicant so admitted, to practice in any of the courts of this state."*

Chapter 268, Acts of 1831 (ratified March 10, 1833) (emphasis added).[36]

Bar membership, thus, has been, and remains, a threshold requirement for the authorized practice of law in Maryland. Although, the process by which one is "admitted to the Bar" has changed over time,[37] the requirement of bar membership

---

**36.** Chapter 268 of the 1831 Laws of Maryland was later amended to prohibit explicitly the practice of law by persons not admitted to the bar and codified in the Maryland Code of Public Laws, article XI, § 1 (1860), which provided, in pertinent part:

"SEC. 1. No attorney or other person shall practice the law in any of the courts of this State *without being admitted* thereto as herein directed.

"2. All applications for admission as attorney to practice the law in this State *shall be made to some one of the Circuit Courts for the counties, the Superior Court of Baltimore city, the Circuit Court for Baltimore city, or to the Court of Appeals, in open court."* (Emphasis added).

In 1888, this provision was moved from Article XI, § 1 to Article X, § 1 of the Code, where it remained until 1989. *See generally,* 1892 Laws of Maryland, ch. 37.; 1898 Laws of Maryland, ch. 139; 1902 Laws of Maryland, ch. 399; 1904 Laws of Maryland, art. 10, sec. 3; 1916 Laws of Maryland, ch. 509, sec. 3; 1918 Laws of Maryland, ch. 426, sec. 3.

In 1989, Article X, § 1 was repealed and reenacted, in substantive part, as §§ 10–206 and 10–601 of the Business Occupations and Professions Article. *See* 1989 Laws of Maryland, ch. 3, § 1; ch. 236, § 1; ch. 631, § 2; ch. 632, § 3.

Maryland Code (1989, Repl.Vol.2004, 2006 Cum.Supp.) § 10–206 of the Business Occupations and Professions Article provides, as relevant:

" § 10–206. *Admission required; exceptions.*

"(a) *In general.* Except as otherwise provided by law, *before an individual may practice law in the State, the individual shall:*

"(1) *be admitted to the Bar;* and

"(2) meet any requirement that the Court of Appeals may set by rule." (Emphasis added).

*See also* § 10–601of the Business Occupations and Professions Article and Maryland Lawyers' Rules of Professional Conduct 5.5, *infra* n. 39, at 39.

**37.** *See* Chapter 268, Acts of 1831, *supra* at 31–32 (applications for

never has. Accordingly, beginning with its adoption in 1864, and continuing to today, the phrase "practiced Law in this State" has required that a person seeking to practice law in Maryland lawfully be admitted to the Maryland Bar. We, thus, reject the Circuit Court's rationale that it was not until 1898 that any uniform standards for bar admissions existed, and, accordingly, when the 1867 Constitution was adopted, the framers could not have intended that an individual who was not admitted to the bar could hold the office of the Attorney General.

We also reject Perez's argument that this Court should construe the eligibility requirements for a candidate seeking to hold the office of the Attorney General liberally merely because Article V, § 4 of the Maryland Constitution does not expressly require that a candidate for that office be "admitted to" or be "a member of" the Maryland Bar. In support of his argument, Perez relies on authority from other jurisdictions. *See State ex rel. Kelly v. Cuyahoga County Board of Elections,* 70 Ohio St.3d 413, 639 N.E.2d 78, 79 (1994) ("Words limiting the right of a person to hold office are to be given a liberal construction in favor of those seeking to hold office, in order that the public may have the benefit of choice from all those who are in fact and in law qualified"), *quoting State ex rel. Schenck v. Shattuck,* 1 Ohio St.3d 272, 439 N.E.2d 891, 893 (1982); *Sears v. Bayoud,* 786 S.W.2d 248, 251 (Tex.1990) ("We have repeatedly recognized the principle that constitutional provisions which restrict the right to hold public office should be strictly construed against ineligibility"). *See also* 91 *Opin-*

---

admission ... shall be made to some one of the county courts, courts of equity or courts of appeals thereof in open court); n. 36, at 32 (applications for admission ... shall be made to some one of the Circuit Courts for the counties, the Superior Court of Baltimore city, the Circuit Court for Baltimore city, or to the Court of Appeals, in open court).

Presently, in order for an individual to be admitted to the bar of the State of Maryland, he or she must take an examination and must be certified by this Court. *See generally,* Rules Governing Admission to the Bar of Maryland, Rules 2 through 7; Section 10–207 of the Business Occupations and Professions Article.

*ions of the Attorney General* at 103 (stating that language should be resolved in favor of eligibility).

This Court is not persuaded that a liberal construction of Article V, § 4 is appropriate. Indeed, we have construed eligibility requirements strictly, where the language of the constitutional provision is clear. In *Oglesby v. Williams,* 372 Md. 360, 812 A.2d 1061 (2002), for example, we held that a candidate for State's Attorney did not meet the residency requirement prescribed by Article V, § 10 of the Maryland Constitution. That provision required that a candidate for State's Attorney have "resided for at least two years, in the county, or city, in which he may be elected." MD CONST. art. V, § 10. In concluding that the candidate had "resided' in Worcester County for less than the constitutionally prescribed residency period, approximately one year and eleven months, this Court rejected Mr. Oglesby's argument that his intent should be the determining factor. We instead applied the plain meaning of the constitutional language itself. We were clear in our holding, moreover, that "[t]he words reside or resident mean domicile unless a contrary intent is shown," 372 Md. at 373, 812 A.2d at 1068, *quoting Roberts v. Lakin,* 340 Md. 147, 153, 665 A.2d 1024, 1027 (1995), giving a strict interpretation to the terms, "reside" and "domiciled," as it pertained to the residency requirement. Similarly, in the case *sub judice,* we shall interpret the phrase, "practiced Law," consistent with its plain meaning; we refuse to interpret it otherwise as there is no semblance of any contrary intent.

Perez nevertheless contends that this Court's historically broad interpretation of what it means to practice law supports his argument and his position. Furthermore, he says, that, because the meaning of "practice of law" has evolved over time, this Court should apply the current usage of the term, which, in his view, is that bar membership is not required under Article V, § 4. We do not agree.

To be sure, this Court has held that a variety of activities may very well constitute the "practice of law," but we have never suggested, much less held, that those activities were so

constituted in this context. On the contrary, we have addressed this issue only in the context of attorney discipline, see, e.g., *Attorney Grievance Comm'n of Maryland v. Hallmon*, 343 Md. 390, 397–98, 681 A.2d 510, 514 (1996) ("[T]he preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity are considered the practice of law"), *quoting Lukas v. Bar Ass'n of Montgomery County*, 35 Md. App. 442, 448, 371 A.2d 669, 673 (1977) *cert. denied*, 280 Md. 733 (1977), *quoting* F.T. vom Baur, *Administrative Agencies and Unauthorized Practice of Law*, 48 A.B.A. J. 715, 716 (1962); *Attorney Grievance Comm'n of Maryland v. James*, 340 Md. 318, 324, 666 A.2d 1246, 1248 (1995) (recognizing that meeting with prospective clients may, depending on the circumstances, constitute the practice of law); *Kennedy v. Bar Ass'n of Montgomery County, Inc.*, 316 Md. 646, 666, 561 A.2d 200, 210 (1989) (holding that interviewing, analyzing, and explaining legal rights constitute "practicing law"). *See also* 68 *Opinions of the Attorney General* at 65 (concluding that Dean of law school had "practiced Law"), and determining the eligibility of an out-of-state attorney to take the Maryland attorneys' examination. *See R.G.S., supra*, 312 Md. at 637–41, 541 A.2d at 982–84. But we have held expressly that, in order for one to practice law in this State, one must be authorized to do so. *See, e.g., Attorney Grievance Comm'n of Maryland v. Alsafty*, 379 Md. 1, 838 A.2d 1213 (2003) (attorney was engaged in the unauthorized practice of law when he practiced in both state and federal courts in Maryland before being admitted to the bar of either court); *Attorney Grievance Comm'n of Maryland v. Barneys*, 370 Md. 566, 805 A.2d 1040 (2002) (attorney admitted to the practice of law in the District of Columbia was engaged in the unauthorized practice of law when he represented multiple clients in Maryland state courts); *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 745 A.2d 1037 (2000) (appearing in court representing a client in a criminal matter after having been decertified constituted the unauthorized practice of law). *See Ginn v. Farley*, 43 Md.App. 229, 403 A.2d 858 (1979) (lay person, who was not an

aggrieved party but who prepared notice of appeal, memorandum of law, argued case before Circuit Court, and noted appeal to the Court of Special Appeals, preparing the necessary brief and record extract, was engaged in the unauthorized practice of law).

Perez, as had the Circuit Court, relies on *R.G.S.* for the proposition that Perez indeed could have been practicing law in Maryland without being engaged in the unauthorized practice of law. We do not agree.

In *R.G.S.*, this Court was asked to determine whether an attorney admitted to practice in North Carolina was eligible, pursuant to former Rule 14,[38] to take the abbreviated Mary-

---

**38.** The Rule 14 to which this Court referred in *R.G.S.* is currently Rule 13 of the Rules Governing Admission to the Bar of Maryland (2007). Rule 13 is derived in part from former Rule 14 and is in part new. Rule 13 provides, as relevant:

"*Out–of–State Attorneys*

"(a) *Eligibility for Admission by Attorney Examination–Generally.* A person is eligible for admission to the Bar of this State under this Rule if the person

"(1) is a member of the Bar of a state;

"(2) has passed a written bar examination in a state;

"(3) has the professional experience required by this Rule;

"(4) successfully completes the attorney examination prescribed by this Rule; and

"(5) possesses the good moral character and fitness necessary for the practice of law.

"(b) *Required Professional Experience.* The professional experience required for admission under this Rule shall be on a full time basis as (1) a practitioner of law as provided in section (c) of this Rule; (2) a teacher of law at a law school approved by the American Bar Association; (3) a judge of a court of record in a state; or (4) a combination thereof.

"(c) *Practitioner of Law.* (1) Subject to paragraphs (2), (3), and (4) of this section, a practitioner of law is a person who has regularly engaged in the authorized practice of law

"(A) in a state;

"(B) as the principal means of earning a livelihood; and

"(C) whose professional experience and responsibilities have been sufficient to satisfy the Board that the petitioner should be admitted under this Rule.

"(2) As evidence of the requisite professional experience, for purposes of subsection (c)(1)(C) of this Rule, the Board may consider, among other things:

"(A) the extent of the petitioner's experience in general practice;

land bar examination for lawyers. We drew a distinction between "practice of law," as used in that Rule and as it pertains to the unauthorized practice of law, proscribed by Maryland Code (1989, Repl.Vol.2004, 2006 Cum.Supp.) § 10–601 [39] of the Business Occupations and Professions Article. We explained:

> "(B) the petitioner's professional duties and responsibilities, the extent of contacts with and responsibility to clients or other beneficiaries of the petitioner's professional skills, the extent of professional contacts with practicing lawyers and judges, and the petitioner's professional reputation among those lawyers and judges; and
>
> "(C) if the petitioner is or has been a specialist, the extent of the petitioner's experience and reputation for competence in such specialty, and any professional articles or treatises that the petitioner has written.
>
> "(3) The Board may consider as the equivalent of practice of law in a state practice outside the United States if the Board concludes that the nature of the practice makes it the functional equivalent of practice within a state.
>
> "(d) *Duration of Professional Experience.* (1) A person shall have the professional experience required by section (b) of this Rule for (A) a total of ten years, or (B) at least five of the ten years immediately preceding the filing of a petition pursuant to this Rule.
>
> "(e) *Exceptional Cases.* In exceptional cases, the Board may treat a petitioner's actual experience, although not meeting the literal requirements of subsections (c)(1) or (d) of this Rule, as the equivalent of the professional experience otherwise required by this Rule.
>
> \* \* \*
>
> "l) *Attorney Examination.* The petitioner must pass an attorney examination prescribed by the Board. The Board shall define, by rule, the subject matter of the examination, prepare the examination, and establish the passing grade. The Board shall administer the attorney examination on a date and at a time during the administration of the regular examination pursuant to Rule 7 and shall publish at least 30 days in advance notice of the date and time of the examination. The Board shall grade the examination and shall send notice of examination results to each examinee by regular mail, postage prepaid. Successful examinees shall be notified only that they have passed. Unsuccessful examinees shall be given their grades in the detail the Board considers appropriate. Review by unsuccessful examinees shall be in accordance with the provisions of Rule 8(b)."

**39.** Maryland Code (1989, Repl.Vol.2004, 2006 Cum.Supp.) § 10–601 of the Business Occupations and Professions Article provides, as relevant:

" § 10–601. *Practicing without admission to Bar.*

"We are persuaded that "practice of law" as used in the unauthorized practice statutes *need not be read as synonymous* with "practice of law" as used in Rule 14. *The question is the goal or objective of each enactment and the context within which the words are used.* The goal of the prohibition against unauthorized practice is to protect the public from being preyed upon by those not competent to practice law-from incompetent, unethical, or irresponsible representation. The purpose of the practice requirement in Rule 14, as we have seen, is to assure a minimum degree of legal competence: to support a presumption ... that ... [the] applicant is competent in the law on the basis of his experience in practice as well as his success in another State's full bar examination."

312 Md. at 638, 541 A.2d at 983 (citations and internal quotations omitted) (emphasis added).

That "minimum degree of legal competence" did not suffice, we were clear, to admit the out-of-state lawyer to the bar of this State, just to allow him or her to avoid having to take the full bar examination in this State. In *R.G.S.*, the question before this Court was not whether the attorney was practicing law in this State; it was simply whether his legal experience was such, of a caliber, that he was eligible to take the abbreviated lawyers' bar examination.

---

"(a) *In general.* Except as otherwise provided by law, *a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar.*" (Emphasis added).

*See also* Maryland Lawyers' Rules of Professional Conduct 5.5 (2007), which provides, in pertinent part:

"(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

"(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

"(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

"(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."

Perez also relies on *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, 192 A. 531 (1937) in support of his argument. In *Norris,* this Court examined whether voting machines lawfully could be used in State elections, when Article 1, § 1 of the Maryland Constitution required that all elections shall be by ballot. The opponents of voting machines contended that it was impossible for the term "ballot" to include voting machines, as such machines did not exist when Article 1, § 1 was adopted. We do not disagree with the theory upon which Perez bases this argument. We do not agree, however, with the result he reaches. Our analysis causes us to reach a different conclusion.

In *Norris,* we opined:

"[W]hile the principles of the constitution are unchangeable, in interpreting the language by which they are expressed, it will be given a meaning which will permit the application of those principles *to changes in the economic, social, and political life of the people, which the framers did not and could not foresee* .... In determining the true meaning of the language used, the courts may consider the mischief at which the provision was aimed, the remedy, the temper and spirit of the people at the time it was framed, the common usage well known to the people, and the history of the growth or evolution ... [and the] long continued contemporaneous construction by officials charged with the administration of the government, and especially by the Legislature."

*Id.* at 675–76, 192 A. at 535 (citations omitted); *Benson v. State,* 389 Md. 615, 633, 887 A.2d 525, 535 (2005); *Boyer v. Thurston,* 247 Md. 279, 292, 231 A.2d 50, 57 (1967); *Johns Hopkins University v. Williams,* 199 Md. 382, 386, 86 A.2d 892, 894 (1952). This Court further asserted:

"[W]here the meaning of the words employed is susceptible of expansion so as to include a significance in complete harmony with the spirit and purpose of the instrument

which will gratify a legislative intent or serve a present need, they may be so interpreted...."
172 Md. at 676, 192 A. at 535.[40]

Nor is this case at all analogous to *Norris*. Although correct in his assertion that the meaning of "practice of law" has evolved, the case *sub judice* does not involve a "change" in the "practice of law." What it means to "practice law in this State" has remained consistent. As noted earlier, albeit the process by which one becomes authorized to practice law and the authorizing authority may have been different when the Maryland Constitution was adopted, nonetheless, there were some formal admission requirements for an individual to practice law in the State.[41] Someone, anyone could not simply walk into a court of law and try a case. His or her qualification to do so had to be evaluated by a judge. It would be illogical, therefore, for this Court to hold, as Perez and the Circuit Court contend the case to be, that the evolution of the law thus far lends credence to the proposition that one who seeks to hold the office of the Attorney General need not be a member of the Maryland bar at all. This "logic" would, in effect, undermine, and ultimately change, the basic principle of construction as we knew it in 1867 and as we know it today.

This Court is not averse to looking at the evolution in circumstances as they relate to the practice of law. Having done so, however, we cannot, and will not, simply by reference

---

**40.** *See also Clauss v. Board of Education of Anne Arundel County,* 181 Md. 513, 30 A.2d 779 (1943). In examining the evolution of "education," this Court remarked:
 "It is not supposed that the framers of the Constitution of 1867 did not expect that the system of education then in force to be changed or improved. They could not, of course, foresee what changes were to come, so they wisely did not attempt to define what they meant by education. *They left that to be interpreted in the light of conditions at any given time when such a question should arise.*"
*Id.* at 523, 30 A.2d at 783 (emphasis added).
 Similarly, the framers did not attempt to define or list the kinds of activities that would constitute the "practice of law". We, however, do not suppose that they at anytime intended the phrase to denote the unlawful practice of law.

**41.** See discussion of bar admissions requirements, *supra* at 175–77, 919 A.2d at 1241–42.

to those circumstances, and in complete disregard of the constitutional language, expand, or restrict, the requirements for the practice of law. To this extent, we agree with the appellant that the Circuit Court's interpretation of Article V, § 4 is too broad. It is true that the *Norris* court cautioned that we are not to be too restrictive in our interpretation of statutes or constitutional provisions; however, neither it nor logic demands that we so broadly interpret a constitutional provision as to make that provision "absurd or unworkable." *See Montgomery County Comm'rs v. Supervisors of Elections of Montgomery County,* 192 Md. 196, 208, 63 A.2d 735, 740 (1948). *See also Bienkowski,* 386 Md. at 548, 873 A.2d at 1141 ("[I]t is a well settled principle of statutory or constitutional construction that a provision should not be construed so as to render it nugatory"); *Comptroller of Treasury v. John C. Louis Co., Inc.,* 285 Md. 527, 539, 404 A.2d 1045, 1053 (1979) ("Results that are unreasonable, illogical or inconsistent with common sense should be avoided and an interpretation should be given which will not lead to absurd or anomalous results"). We reject Perez's argument that this Court should take a liberal view of what it means to "practice law" as this would go against the intent of the framers and the purpose of the provision as a whole.

Thus, the Circuit Court correctly observed that Perez was not engaged in the unauthorized practice of law when he was performing his duties as a Justice Department lawyer. It does not follow, however, that, as that court concluded, merely because the practice was authorized by another licensing authority and then for a limited purpose and the practice occurs physically within the confines of the State, that that practice suffices as the "practice of law in this State," as the term is used in Article V, § 4. As we have concluded, such practice, by its plain meaning, implies actual bar membership in the Maryland Bar.

## B.

The appellant's next argument relies on the legislative history of Article V, § 4. This Court has held that, when

attempting to discern the intention of the Legislature in proposing a particular constitutional provision, "it is *permissible* to inquire into the prior state of the law, the previous and contemporary history of the people, the circumstances attending the adoption of the organic law, as well as broad considerations of expediency." *Brown* 287 Md. at 278, 412 A.2d at 399.[42] *See, e.g., Luppino v. Gray*, 336 Md. 194, 204 n. 8, 647 A.2d 429, 434 n. 8 (1994) ("One of the sources to which the court may look to discern the framers' purpose in enacting the [constitutional] provision is the proceedings of the constitutional convention"), *citing Reed v. McKeldin*, 207 Md. 553, 561, 115 A.2d 281, 285 (1955); *Cohen v. Governor of Maryland*, 255 Md. 5, 16, 255 A.2d 320, 325 ("The intention [of a constitutional provision] "is primarily discovered by considering the words used by the draftsmen"); *McMullen v. Shepherd*, 133 Md. 157, 160, 104 A. 424, 425 (1918) ("In construing the Constitution we are to consider the circumstances attending its adoption and what appears to have been the understanding of the people when they adopted it, and one of the useful and most helpful sources is the debates of the Convention"). Accordingly, we look, now, to the history and purpose of Article V, § 4 in an attempt to determine the scope and applicability the framers and the people intended it to have to this case.

The appellant argues that the Attorney General could not discharge the duties of the position, as outlined in Article V, § 3, unless he were a member of the Maryland Bar, as

---

**42.** This Court's examination of the legislative history of Article V, § 4 should not be misconstrued as an attempt, on our part, to resolve an ambiguity in the provision. As we have stated, it is this Court's holding that the phrase, "practiced Law in this State for at least ten years," is clear and unambiguous. We inquire into the legislative history as both confirmation of our interpretation and in response to the arguments offered by both parties. *See, e.g., Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 131, 756 A.2d 987, 993 (2000) ("[T]he resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute"); *Morris v. Prince George's County*, 319 Md. 597, 604, 573 A.2d 1346, 1349 (1990) ("Even when the words of a statute carry a definite meaning, we are not 'precluded from consulting legislative history as part of the process of determining the legislative purpose or goal' of the law"), *quoting Wilde v. Swanson*, 314 Md. 80, 92, 548 A.2d 837, 843 (1988).

appearance in the courts of the state and the ability to practice law without restriction are necessary to being able to do so. Consequently, he contends that the framers must have intended for the Attorney General to be admitted to practice in the State. Perez, on the other hand, argues that the language of Article V, § 3, in fact, granted the Attorney General the power to appear in state courts, thus, allowing him to do so under constitutional mandate, rather than through the traditional bar admission process.

There is no conflict between Article V, § 3 and Article V, § 4. The appellant correctly asserts that, when the constitutional provisions pertaining to the office of the Attorney General were adopted, the Attorney General was required to appear *personally* in the courts o f this State and that he could not have done so unless he were a member of the Maryland Bar. Perez's contention, on the other hand, that Article V, § 3 was intended to circumvent the bar admission procedures simply is unpersuasive. Article V, § 3, enumerating the duties of the Attorney General, does not address and, indeed, is irrelevant to the qualifications of a candidate to contest for the office of the Attorney General; it has no application until a candidate has been declared the winner and, as a result, assumes the office. That is to say, Section 3 does not come into play until one actually becomes the Attorney General. Thus, contrary to Perez's argument, the qualification requirements of the Attorney General, as prescribed by Article V, § 4, are not superseded by the duties that are outlined in Article V, § 3. Reading Article V, § 4 in context with the historical role of the Attorney General leads to the consistent conclusion that the framers did, indeed, intend for the office to be held by one who is admitted to practice law in the State.

## C.

In interpreting Article V, § 4, in addition to its current language, which is the reason for the dispute in the case *sub judice,* the parties examine the changes that language has undergone, over time, since its initial adoption.[43] To be sure,

---

**43.** *See* constitutional provisions, *supra* at 168–69, 919 A.2d at 1236–37.

Article V, § 4 has undergone various changes. There was a very distinct difference between what was proposed with regard to Attorney General eligibility, in their several iterations, and what ultimately was adopted. As proposed, Article V, § 4 would have read:

"No person shall be eligible to the office of attorney general, *who has not been admitted to practice the law in the State,* and who has not practiced the law for ____ years, and who has not resided for at least ____ years in the State." (Emphasis added).

As adopted, the bar admission and length-of-practice provisions were merged into a single requirement, that the candidate have practiced law for the specified period. It is that merger which is the point of contention in the instant case.

Both sides offer justification for the Convention's merger of qualifications. Viewing it as an apparent omission of the phrase "who has not been admitted to practice law in the State" from the final version of the enactment, the appellant argues that the framers did not mean to remove the bar admission requirement at all, but, instead, recognized that it was not necessary, that to provide explicitly that the Attorney General be admitted to the bar to practice law in Maryland would have been duplicitous. On the other hand, Perez, proceeding on the same premise, contends that the phrase was omitted because the framers did not intend that such a requirement apply to candidates for the office of the Attorney General. He asserts, relying on this Court's holding in *Kadan v. Board of Supervisors of Elections of Baltimore County,* 273 Md. 406, 329 A.2d 702 (1974), that, if the framers had intended to impose a bar membership requirement on Attorney General candidates, they, like the framers in numerous other states, would, and could, have retained that express language.[44]

---

**44.** Perez cites to provisions governing eligibility for the office of the Attorney General contained in other states' constitutions. To be sure, other states have used more explicit language to reach the conclusion advanced by the appellant, *see, e.g.,* Connecticut Gen.Stat. Ann. § 3–124 (requiring that Connecticut Attorney General be "an attorney at law of at least ten years' active practice at the bar of this state."); Colorado

In *Kadan,* candidates for the office of judge of the Orphans' Court, who were members of the Maryland Bar, brought an action against the State Board to prohibit it from placing on the ballot the names of candidates for that office who were not members of the Maryland Bar. The plaintiffs maintained that Article IV, § 40[45] required judges of the Orphans' Court to be members of the Maryland Bar. This Court did not agree. We held, instead, that candidates for judge of the Orphans' Court were not required to be lawyers.

Perez argues that, as in *Kadan,* the lack of express language requiring bar membership as a prerequisite qualification is an indication that a candidate for the office of the Attorney General need not be a member of the Maryland Bar. We do not quarrel with, indeed, agree with, Perez's analysis of *Kadan.* *Kadan* does not support his argument in this case, however. It is, in fact, distinguishable from the case *sub judice.* Article IV, § 40 does not make *any* reference whatever to the practice of law or, for that matter, to any indicia that would suggest, much less indicate, that bar membership is a prerequisite for being an Orphans' Court judge. Thus, in

Constitution, Art. IV, § 4 (requiring nominees for Supreme Court justice to have been licensed to practice law in Colorado for at least five years, and requiring Attorney General nominees to be a licensed attorney in good standing); Code of Virginia § 24.2–501 (requiring nominees for Attorney General to have been admitted to the bar of the Commonwealth for at least five years directly preceding the election); however, we are not persuaded that bar admission was not necessarily encompassed in the "practiced Law in this State" language of Article V, § 4, and, thus, a requirement. Therefore, Perez's comparison of this provision to other more explicit provisions does not compel a different result.

**45.** Article IV, § 40 governs the eligibility requirements for Orphans' Court judges and provides, in pertinent part:
"The qualified voters of the City of Baltimore, and of the several Counties, except Montgomery County and Hartford County, shall elect three Judges of the Orphans' Courts of City and Counties, respectively, who shall be citizens of the State and residents, for the twelve months preceding, in the City or County for which they may be elected."
MD CONST. art. IV, § 40.

*Kadan,* there simply was nothing that could be inferred about the issue, from the constitutional provision, the words used or omitted, as there is in the instant case.

In *Kadan,* in other words, this Court was not faced with the interpretation of specific language pointing to a qualification, the perimeters of which are in dispute, as in this case. Rather, this Court had to discern the significance of the absence of any language tending to support the claimed qualification. Although the election was for a "judge," the only qualifications enumerated were citizenship and residency. The provision did not refer at all to bar membership or law practice. Here, to the contrary, Section 4 explicitly provides that the candidate have "practiced Law in this State." Consequently, given the law and rules pertaining to the practice of law, that provision reasonably may be construed expressly and clearly to contemplate, albeit perhaps by implication, bar admission. The lack of any express language at all with respect to bar admission or law practice, as in *Kadan,* simply can not be equated with the situation *sub judice,* where there is a clear requirement of the practice of law in the State, for some length, but no explicit requirement that the candidate be "admitted to the bar." Article V, § 4, in other words, is not devoid of all language that would require a candidate for the Attorney General to be a lawyer, thus, arguably opening the position to non-lawyers. On the contrary, it reflects, we believe clearly, the purposeful merger of two requirements, which, taken together, make clear that being an attorney is a necessary requirement to being able to run for, and hold, the office of the Attorney General.

This Court interprets the framers' actions as an attempt to avoid being repetitive. The rewording of the provision was not, as Perez claims, a result of an attempt to change the meaning of the language or to change the eligibility requirements for the office of the Attorney General. Confirmation of our interpretation is provided by the proceedings of the debates. During the debates of the 1850 Constitutional Con-

vention, Delegate Benjamin C. Howard [46] of Baltimore County, albeit discussing the eligibility requirements of prosecuting attorneys, stated:

> "In framing a Constitution ... *it [is] altogether unnecessary to introduce all the matters of detail, when we ought to content ourselves with laying down certain general rules or principles for the guidance of the legislature.* If we are to go on in this way, it will end in making a book which the people will no more understand than they do the old Constitution itself, and after all, it will be found impossible for us to provide for all contingencies. To specify that a man who is elected to the office of prosecuting attorney must be a practitioner of laws is entirely superfluous. It is preposterous to fill the Constitution with details of this sort ... it was generally understood that the applicant for the office must know something of the business, that he must be a practitioner of law. If we are apprehensive that the people may elect some one who is entirely incompetent to perform the duties of the office, it will be better that we should not give them the right to elect."

*Debates I* at Vol. II, 14 (emphasis added). *See also The Debates of the Constitutional Convention of the State of Maryland* ("Debates II"), 369 (Annapolis, 1864) (Mr. DUVALL. "If it is correct to say 'frequent, maintain, or contribute,' then the 'or' between 'frequent' and 'maintain' is superfluous."); Debates II at 1601 (Mr. SCHLEY said: I have no objection to the proposition as it stands; but deeming it superfluous, I vote "no").

Perez also relies on Article IV, § 2 and Article V, § 10 of the Maryland Constitution, which, respectively, require judicial candidates to "have been admitted to practice law in this State" and candidates for the office of State's Attorney to have "been admitted to practice law in this State." His argument,

---

46. Delegate Howard was a congressman. His study of law was interrupted by his service in the U.S. Army during the War of 1812, where he reached the rank of brigadier general before returning to Maryland to complete his legal studies. He was admitted to the Maryland bar in 1816 and ran for Governor in 1861.

the framers' use of express language requiring bar membership in these provisions is indicative that their intent, as expressed in Article V, § 4, was not to require it there.

Perez and the Circuit Court read Article IV, § 2 and Article V § 10 to mean that only candidates for state's attorney and judge are required to be admitted to the bar and that is because the constitutional provisions governing each say so. On the other hand, he continues, the absence of the same or similar language in Article V, § 4 indicates that it is possible for the Attorney General candidate to practice law without ever having been admitted to the Maryland Bar. We decline to so interpret the framers' intent. That would mean that state's attorney and judicial candidates are required to be admitted to the bar, while the State's lawyer, the "top" lawyer for the State—and at times the *only* lawyer for the State in civil, Federal, and appellate proceedings—need not be.

Moreover, the assumption underlying this argument may not be correct. It is not at all clear that requiring candidates for judge and state's attorney to be members of the bar was imposed as a more stringent requirement than that for Attorney General. To this Court, it is far more likely that it was intended to be, rather, a more relaxed one. The framers' intent was to require of candidates for State's Attorney and judge solely that they be admitted to the bar. That is to say, they very deliberately did not impose on those seeking to be a state's attorney or a judge the requirement of having actually "practiced law," whether in Maryland or elsewhere, just that they be members of the bar. The opposite is true for the office of the Attorney General. Because the Attorney General was, and is, intended to be the foremost lawyer for the State, it is not surprising that a candidate for that office would be required to have more qualification than simply a bar membership, that it would be required that a person aspiring to that position would be required to be both learned in the law, as evidenced by his or her bar membership, and experienced in its practice, as reflected in his or her length of practice.

As stated earlier, constitutional provisions need to be read in context and as a whole. *See Mohler, supra,* 318 Md. at 225, 567 A.2d at 932, *quoting Rucker, supra,* 315 Md. at 565, 555 A.2d at 1063; *Wheeler, supra,* 281 Md. at 596, 380 A.2d at 1055. The appellant concedes that a candidate for the office of the Attorney General need only be a member of the bar in order to be eligible and urges this Court to so hold. On the other hand, Perez urges this Court to hold that "practice" for the requisite time period is all that is required. Thus, the appellant reads out of Article V, § 4, the "practiced Law" language,[47] and Perez reads that same language narrowly and in a constrained manner, refusing to give it its common and ordinary signification. Neither, in other words, reads Article V, § 4 as a whole.

Turning again to the debates of the Constitutional Convention of 1864, Delegate Archibald Stirling Jr. of Baltimore City, while discussing the salary of the Attorney General, stated that "[the citizens of Maryland] *must have for the attorney general a man who is* accustomed to trying cases, or he will not be fit for the office." Debates II at 1461. During the same debate, Delegate Peter Negley of Washington County and Delegate John E. Smith of Carroll County also spoke to the "kind" of individual who should occupy the office of the Attorney General. Delegate Negley observed that "if [the framers] put in an insufficient salary, [they could] not get the services of a man whose services [would] be worth anything. And rather than have a second or third rate man in the office, [they should] strike out the provision entirely," *Debates II* at 1460, while Delegate Smith stated:

---

**47.** The appellant argues that if Perez had been a member of the Maryland Bar, rather than the New York Bar for the past 17 years and possessed the same professional qualifications, he would be eligible to hold the office of the Attorney General. We do not agree. As noted earlier, one who seeks to hold the office of the Attorney General must be both a member of the Maryland Bar for at least ten years and must have practiced law in Maryland for at least ten years; thus, Perez's eligibility to be Attorney General under the appellant's hypothetical is at least an open question.

"I think a man who is called upon to fill this responsible position, ought to have practiced law for ten years at least. *It is one of the most important and responsible positions in the State.* And from the circumstances that now surround us, from the changes proposed to be made by this constitution, it is *evident that we require in this position the services of one who has occupied a leading position, in the profession for ten years at least." Debates II* at 1465. (Emphasis added)

Delegate Smith stated further:

"I know there are instances of rather extraordinary men. But a gentleman may be learned in the law, and yet not knowing about the duties of attorney general. I think ten years is short enough time to require of one who will be called upon to apply himself to *the practice of law in all its branches." Id.*[48]

It is apparent that the framers, viewing the position of Attorney General as a highly important one, requiring the practice of law in all the government's branches, desired to have an experienced attorney fill that role, measured by a term of ten years. A mere member of the bar for a few years would be insufficient—while they recognized that there may be instances of brilliant attorneys who could perform the duties of the Attorney General without ten years of bar membership, the framers felt secure in promoting a seasoned

---

**48.** Delegate Smith's proposal that a candidate for the office of the Attorney General needs to have practiced law in this State for ten years was rejected by a vote of 24 yeas and 26 nays. The Convention, ultimately rejecting Delegate Smith's as well as Delegate Frederick Schley's proposal that the minimum length of practice should be 5 years, settled on seven years as the requirement, adopting the proposal by Delegate Ezekiel Forman Chambers of Kent County. The minimum practice required of a candidate for the Attorney General subsequently was changed to ten years with the adoption of the 1867 Maryland Constitution. It was proposed at the 1967 Constitutional Convention that the practice period be reduced to five years. *See Constitutional Convention of Maryland 1967–1968 Comparison of Present Constitution and Constitution Proposed by Convention,* 77–78, 157 (Baltimore, 1968). That proposal was rejected, however. The language of Article V, § 4, thus, has remained unchanged for over a century.

practicing attorney for the position, one who was admitted to the Maryland Bar and had, in fact, practiced for the prescribed period.[49] The framers did not ever contemplate that the office would be held by an individual who did not, at the least, possess a professional record of the length prescribed, upon which the voters could base their decision. Thus, we hold, a candidate for the office of the Attorney General must be both a member of the Maryland Bar for ten years and a practitioner of law in Maryland for ten years.[50]

---

**49.** It can be deduced from these debates that the framers, in fashioning the "practiced Law" requirement in Article V, § 4, felt that ten years was an adequate amount of time after which an attorney, having practiced the entire time, would be sufficiently tested and, thus, capable of handling the duties of the Attorney General. The change of length requirement from 1864 to 1867, requiring an additional three years, only confirms this Court's holding that a candidate for the office of the Attorney General must be an experienced attorney admitted to practice law in Maryland.

**50.** An examination of the past Attorneys General of the State of Maryland, from 1864 to the present, the period from which the eligibility requirements were first articulated to now, reveals that all those who have occupied the office of the Attorney General have been members of the Maryland Bar and have had the requisite practice experience. *All* of this State's past Attorneys General practiced law in Maryland, as members of the Maryland Bar, for a period of at least ten years. This Court, thus, declines to depart from what has been, and continues to be, the clear, unambiguous eligibility requirements for this office. To allow an individual who does not meet the qualifications, as prescribed by Article V, § 4, to become the Attorney General of this State would serve to undermine not only the intent of the framers but also the long history of those competent individuals who have performed the duties of this important office.

The following is a list of Maryland's Attorneys General from 1864 to the present, detailing their requisite professional experience: *Alexander Randall* (1865–1867), admitted to the Bar in 1824, engaged in private practice from 1824–41; *Andrew K. Syester* (1871–1875), admitted to the Bar in 1853, partner at A.C. Bond of Westminster from 1853–71, State's Attorney for Washington County in 1854; *Charles J.M. Gwinn* (1875–1883), admitted to the Bar in 1843, lead counsel for the B & O Railroad, General Counsel for Western Maryland Union Telephone Co. and C & P Telephone Co. 1843–49, State's Attorney for Balto. City 1857–61; *Charles Boyle Roberts* (1883–1887), admitted to the Bar in 1864, private practice 1864–75, 1879–83; *William Pinkney Whyte* (1887–1891), admitted to the Bar in 1846, private practice 1849–51, 1857–68, 1874–75, 1883–87; John *Prentiss Poe* (1891–1895), admitted to the Bar in 1857, private practice/founder law firm of John P. Poe &

Sons 1857–71, Professor of Law, University of Maryland School of Law 1869–71, Dean, University of Maryland School of Law 1871–1909, Baltimore City Counselor 1882–84; *Harry M. Clabaugh* (1895–1899), admitted to the Bar in 1878, private practice 1878–91; *George Riggs Gaither, Jr.* (1899), admitted to the Bar 1886, private practice 1886–99; *Isidor Rayner* (1899–1903), admitted to the Bar in 1871, private practice 1871–78, 1894–99; *William Shepard Bryan, Jr.* (1903–1907), admitted to the Bar in 1882, private practice 1882–90, City Solicitor 1892–96; *Isaac Lobe Straus* (1907–1911), admitted to the Bar in 1892, private practice 1892–1902; *Edgar Allan Poe* (1911–1915), admitted to the Bar in 1885, private practice John P. Poe & Sons 1895–1900, Deputy State's Attorney and State's Attorney for Baltimore City 1900–07, Deputy City Solicitor and City Solicitor 1908–11; *Albert C. Ritchie* (1915–1919), admitted to the Bar in 1898, private practice Steele, Seemes, Carey & Bond 1900–03, Janney and Ritchie 1903–19, Assistant City Solicitor for Baltimore 1903–10, Professor of Law, University of Maryland School of Law 1907–20; *Ogle Marbury* (1918–1919), admitted to the Bar in 1904, private practice Marbury & Perlman and later partner with Lee I. Hecht 1904 –1910, Attorney for the County Commissioners of Prince George's County 1914–18, 1937–41, Attorney for Bd. of Education Prince George's County 1916–37, Assistant Attorney General 1916–20; *Alexander Armstrong* (1919–1923), admitted to the Bar 1904, City Attorney for Hagerstown 1904–06, State's Attorney for Washington County 1908–12, private practice Armstrong & Scott 1912–19; *Thomas H. Robinson* (1923–1930), admitted to the Bar 1883, private practice 1883–1923; *William Preston Lane, Jr.* (1930–1934), admitted to the Bar 1916, private practice Keedy & Lane (later Lane, Bushong & Byron) 1919–30; *Herbert R. O'Conor* (1934–1938), admitted to the Bar 1919, General Counsel for American Merchant Marine Institute 1920–21, Assistant State's Attorney for Baltimore City 1921–22, State's Attorney for Baltimore City 1923–34; *William C. Walsh* (1938–1945), admitted to the Bar 1912, private practice 1913–16, City Solicitor Apr. 1920— Sept.1921, Associate Judge Fourth Judicial Circuit 1921–24, Chief Judge Fourth Judicial Circuit and member of the Court of Appeals 1924–26; *William Curran* (1945–1946), admitted to the Bar 1910, private practice 1910–45; *Hall Hammond* (1946–1952), admitted to the Bar 1925, Private practice Willis & Hudgins 1925–29, private practice 1929–38, Deputy Attorney General of Maryland 1938–46; *Edward D.E. Rollins* (1952–1954), admitted to the Bar 1922, State's Attorney for Cecil County 1930–1943; *C. Ferdinand Sybert* (1954–1961), admitted to the Bar 1925, private practice 1925–31, Counsel for Howard County Bd. of County Commissioners 1931–34, State's Attorney for Howard County 1934–46; *Thomas B. Finan* (1961–1966), admitted to the Bar 1939, private practice 1939–41, 1945–48, City Solicitor for Cumberland 1948–50, 1952–59; *Robert C. Murphy* (1966), admitted to the Bar 1952, Counsel to the University of Maryland 1952–54, Special Assistant to the Attorney General, Assistant Attorney General, and Deputy Attorney General of Maryland 1956–66; *Francis B. Burch* (1966–1978), admitted to the Bar in 1943, private practice Allen, Burch and Baker 1945–61, City Solicitor of Baltimore 1961–63; *Stephen H. Sachs* (1979–1987), admitted to the Bar 1960, Assistant U.S. Attorney for Maryland 1961–

### D.

The appellant's final argument addresses Perez's federal bar membership. Perez argues that, because he has practiced federal law in Maryland for over 20 years, he meets the "practiced Law in this State" requirement. That is so, Perez contends, because his federal bar membership and his position with the Justice Department authorized him to practice law in this State and that his oversight of cases involving Maryland and any appearances in the federal courts in Maryland was evidence that he has practiced law "in this State," within the meaning of Article V, § 4. Again, we do not agree.

Perez bases his argument on 28 U.S.C. § 517 (2007) and Rule 701(1)(b) of the Local Rules of the United States District Court for the District of Maryland (2007). 28 U.S.C. § 517 provides:

"The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, *or in a court of a State,* or to attend to any other interest of the United States."

To be sure, Perez is correct that he was authorized, beginning in 1989 and continuing until he left federal government service, to appear in any State or in any federal court in which a suit affecting the interests of the United States was pending, even those to whose bar he had not been admitted to practice, "to attend to the interests of the United States." That authorization, however, does not equate to the practice of law in this State, as contemplated by Article V, § 4. A member of the bar of any state may be admitted to the federal bar of any state, whether or not admitted to the bar of the state in which the federal court is located physically.[51] Consequently, the

---

64, private practice Tydings, Rosenberg & Gallagher 1964–67, U.S. Attorney for Maryland 1967–1970, private practice 1970–79; *J. Joseph Curran* (1987–2007), admitted to the Bar 1959, Attorney 1959–87.

**51.** *See* Federal Rules of Appellate Procedure Rule 46, which provides, as relevant:

entry of appearance in a federal court located in this State by someone not admitted by this Court to practice here is not tantamount to practicing law in this State.[52] Nor is the appearance in Maryland state courts "to attend to the interests of the United States" authorization to practice law in this State for purposes of Article V, § 4. As with *Pro Hac Vice* admissions, *see* Rule 14,[53] its duration is fixed and its purpose

"Rule 46. *Attorneys.*
"(a) *Admission to the Bar.*
"(1) *Eligibility.* An attorney is eligible for admission to the bar of a court of appeals if that attorney is of good moral and professional character and is admitted to practice before the Supreme Court of the United States, *the highest court of a state,* another United States court of appeals, or a United States district court (including the district courts for Guam, the Northern Mariana Islands, and the Virgin Islands)."

**52.** We know this to be true, as we have previously held that an attorney who was authorized to practice in a Maryland federal court violated the Rules of Professional Conduct when she attempted to practice at the Maryland state level without Maryland bar membership. *See Attorney Grievance Comm'n v. Johnson,* 363 Md. 598, 628, 770 A.2d 130, 148 (2001); *See also Alsafty,* 379 Md. at 18–20, 838 A.2d at 1223–24; *Bridges, infra* at 202–03, 919 A.2d at 1258, 360 Md. at 509–12, 759 A.2d at 244–45; *Attorney Grievance Comm'n v. Harris–Smith,* 356 Md. 72, 83–84, 737 A.2d 567, 573 (1999); *Kennedy, infra* at 202–03, 919 A.2d at 1258, 316 Md. at 667–68, 561 A.2d at 211. The holdings in these cases could not be correct unless practice in Maryland federal courts were viewed differently than practice in Maryland state courts.

**53.** Rule 14 of the Rules Governing Admission to the Bar of Maryland (2007) provides, as relevant:
"*Special admission of out-of-state attorneys.*
"(a) *Motion for special admission.* A member of the Bar of this State who is an attorney of record in an action pending in any court of this State, or before an administrative agency of this State or any of its political subdivisions, or representing a client in an arbitration taking place in this State involving the application of Maryland law, may move, in writing, that an attorney who is a member in good standing of the Bar of another state be admitted to practice in this State for the limited purpose of appearing and participating in the action as co-counsel with the movant. If the action is pending in a court, the motion shall be filed in that court. If the action is pending before an administrative agency or arbitration panel, the motion shall be filed in the circuit court for the county in which the principal office of the agency is located or in which the arbitration hearing is located or in any other circuit to which the action may be appealed and shall include the movant's signed certification that copies of the motion

defined—it ordinarily is limited to the pending case. Until he became a member of the Maryland Bar in 2001, Perez simply did not have carte blanche authorization to practice law in the state of Maryland; he could practice only in federal court or in

---

have been furnished to the agency or the arbitration panel, and to all parties of record.

\* \* \*

"(d) *Limitations on out-of-state attorney's practice.* An attorney specially admitted may act only as co-counsel for a party represented by an attorney of record in the action who is admitted to practice in this State. The specially admitted attorney may participate in the court or administrative proceedings only when accompanied by the Maryland attorney, unless the latter's presence is waived by the judge or administrative hearing officer presiding over the action. Any out-of-state attorney so admitted is subject to the Maryland Lawyers' Rules of Professional Conduct."

*See also* Rule 15 of the Rules Governing Admission to the Bar of Maryland (2007), which provides, as relevant:

"*Special authorization for out-of-state attorneys to practice in this state.*

"(a) *Eligibility.* Subject to the provisions of this Rule, a member of the Bar of another state who is employed by or associated with an organized legal services program that is sponsored or approved by Legal Aid Bureau, Inc. may practice in this State pursuant to that organized legal services program, if (1) the individual is a graduate of a law school meeting the requirements of Rule 4(a)(2), (2) the legal services program provides legal assistance to indigents in this State, and (3) the individual will practice under the supervision of a member of the Bar of this State.

"(b) *Proof of eligibility.* To obtain authorization to practice under this Rule the out-of-state attorney shall file with the Clerk of the Court of Appeals a written request accompanied by (1) evidence of graduation from a law school as defined in Rule 4(a)(2), (2) a certificate of the highest court of another state certifying that the attorney is a member in good standing of the Bar of that state, and (3) a statement signed by the Executive Director of Legal Aid Bureau, Inc., that the attorney is currently employed by or associated with an approved organized legal services program.

\* \* \*

"(e) *Revocation or suspension.* At any time, the Court, in its discretion, may revoke or suspend authorization to practice under this Rule either by written notice to the attorney or by amendment or deletion of this Rule.

"(f) *Special authorization not admission.* Out-of-state attorneys authorized to practice under this Rule are not, and shall not represent themselves to be, members of the Bar of this State, except in connection with practice that is authorized under this Rule. They shall be required to make payments to the Client Protection Fund of the Bar of Maryland and the Disciplinary Fund."

state court in the interest of the United States. 28 U.S.C. § 517 does not obviate the Maryland requirement that one desiring to practice law in Maryland must be admitted to the Maryland Bar.

Perez fares no better under Rule 701(1)(b) of the Local Rules of the United States District Court for the District of Maryland. Rule 701(1)(b) provides:

"An attorney who is a member of the Federal Public Defender's Office, the Office of the United States Attorney for this District, or other federal government lawyer, is qualified for admission to the bar of this District if the attorney is a member in good standing of the highest court of any state."

Rule 701(1)(b) outlines the qualifications an attorney who wishes to become a member of "the bar of this District," must meet. It does not address the bar admission rules or requirements of Maryland, the State in which it is located.

Unlike 28 U.S.C. § 517, however, Rule 701(1)(b) draws expressly a distinction between federal bar admittance and state bar admittance. This is significant and consistent with our approach to the federal/state practice issue. This Court has held that a lawyer admitted to the federal bar in this State is not authorized to practice law in the State courts, unless also admitted to the Maryland Bar.

As the Circuit Court noted, *Kennedy, supra,* 316 Md. 646, 561 A.2d 200 and *Bridges, supra,* 360 Md. 489, 759 A.2d 233, permit a non-Maryland lawyer, admitted to the bar of another state and to the federal bar, to maintain a federal practice in this State. They do not stand for the proposition that the maintenance of such a practice satisfies the practice of law requirement of Article V, § 4, however. *Kennedy* and *Bridges,* in fact, illustrate the difference between maintaining a federal practice in this State and practicing law in this State.

In *Kennedy,* an attorney, who was a member of the federal bar and of the Court of Appeals of the District of Columbia, but not a member of the Maryland bar, was determined to have engaged in the unauthorized practice of law in Maryland,

when he advised clients and prepared documents in connection with matters involving state law and state legal issues, in his principal office, located in Maryland. 316 Md. at 663, 561 A.2d at 208. In holding that the attorney's argument "turn[ed] on the substantive law applicable or potentially applicable to the client's matter," Id. at 662, 561 A.2d at 208, we differentiated between the federal practice he was permitted to have and the state law practice, which was not permitted:

"Kennedy may not utilize his admission to the bar of the federal court in Maryland, or his admission in Washington, D.C., as a shield against injunctive relief by asserting that he will operate a triage. He is not permitted to sort through clients who may present themselves at his Maryland office and represent only those whose legal matters would require suit or defense in a Washington, D.C. court or in the federal court in Maryland because the very acts of interview, analysis and explanation of legal rights constitute practicing law in Maryland. For an unadmitted person to do so on a regular basis from a Maryland principal office is the unauthorized practice of law in Maryland."

*Id.* at 666, 561 A.2d at 210.

*Bridges* was to like effect. In holding that an attorney admitted to practice in a number of jurisdictions, other than Maryland, including the Maryland federal bar, did not engage in the unauthorized practice of law in Maryland before his admission to the Maryland Bar, this Court examined the substance of Bridges' activities. 360 Md. at 511, 759 A.2d at 245. We concluded that, rather than engaging in the unauthorized practice of law, he limited his practice in this State very specifically to federal court and federal law. *Id. See also Harris–Smith, supra,* 356 Md. at 83–84, 737 A.2d at 573 (holding that an attorney admitted to the federal district court in the State, but not to the State bar, engaged in the unauthorized practice of law when she screened her firm's clients for her bankruptcy practice and held herself out to the public as a general practitioner); *Johnson,* supra, 363 Md. at 628, 770 A.2d at 148 (holding that an attorney admitted to the federal bar engaged in the unauthorized practice of law when he met

with, and advised, clients in a Maryland office, made telephone calls to clients from his Maryland home, executed retainer agreements in Maryland and did not include his jurisdictional limitations on the firm's letterhead, which bore only a Maryland address).

Perez, finally, relies on *Sperry, supra,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428, to support his argument that his federal bar membership allowed him to practice law in this State and that practice counts toward his eligibility to be the Attorney General. In *Sperry,* the Supreme Court of Florida held that the petitioner, a non-lawyer registered to practice before the United States Patent Office, had engaged in the unauthorized practice of law by maintaining an office in the State, preparing legal documents, and by holding himself out to the public as a Patent Attorney. The Supreme Court of the United States reversed, holding:

"A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress. 'No State law can hinder or obstruct the free use of a license granted under an act of Congress.' "

373 U.S. at 385, 83 S.Ct. at 1326, 10 L.Ed.2d at 432–33, *quoting Pennsylvania v. Wheeling & Belmont Bridge Co.,* 54 U.S. 518, 566, 13 How. 518, 566, 14 L.Ed. 249, 269 (1851).

Perez's reliance on *Sperry,* and, in effect, on the Supremacy Clause, is misplaced. While we agree with the principles enunciated in *Sperry,* in context, the case simply is inapposite. It is true that a non-lawyer was authorized to practice law in Florida pursuant to federal law and regulations; however, that practice was limited to a specialized federal practice and federal law. What the Florida Supreme Court did, which the Supremacy Clause did not permit, was to prohibit what federal law allowed; it denied Sperry the right to do in Florida

what federal law permitted him to do there. On the other hand, the federal law that permitted Sperry to practice patent law, even though he was a non-lawyer, did not, and did not purport to, authorize Sperry to engage in a State law practice in Florida or to enable him to avoid the State bar admission requirements.

The statute relevant to this case, 28 U.S.C. 517, and Local Rule 701(1)(b), as in *Sperry,* authorized Perez to "practice" in Maryland, but only to protect the interests of the United States or, in the case of the rule, in federal court; neither authorized, or purported to, the unrestricted practice of law or, more to the point, a Maryland State law practice. Unlike in *Sperry,* therefore, not construing Perez's federal practice, even that which occurred in Maryland and that may have involved Maryland issues, as the practice of law in this State for purposes of his qualifying to be the Attorney General of this State in no way denied Perez the rights the federal statute and the local rule gave him. Just as the ruling in *Sperry* did not give the petitioner more rights than those that were already conferred upon him, our ruling simply does not confer on Perez rights to which he is not entitled by virtue of the federal statute and rule.

To be clear, it is not this Court's holding that Perez has not practiced law for the requisite ten year period. Indeed, we agree that he has continuously been practicing law since his admission to the New York Bar in 1988. Rather, we decline to construe Article V, § 4 so as to credit all of that "practice" as complying with the provision's "practiced Law in this State" requirement.

On this point, Perez contends that the framers were not concerned with the person occupying the office of the Attorney General having sufficient legal experience in connection with Maryland, but, instead, that he or she were "merely steeped in the law, of sufficient legal maturity to undertake the duties of the office." *See* 68 *Opinions of the Attorney General* at 54. He argues, moreover, that because his federal

practice took place in Maryland, he has, in fact, been practicing law "in this State."

We reject this argument. Article V, § 4, read in conjunction with the duties delineated in Article V, § 3, clearly reflects the intent of the framers that the Attorney General be a Maryland lawyer, with a specified amount of experience. The Attorney General's first and foremost duty is to "prosecute and defend *on the part of the State* all cases in the *appellate courts of the State,* in the Supreme Court of the United States or the inferior Federal Courts, *by or against the State, or in which the State may be interested* . . . ." MD CON ST. art. V, § 3(a)(1) (emphasis added). In addition, the Attorney General is required to:

> "(2) Investigate, commence, and prosecute or defend *any* civil or criminal suit or action or category of such suits or actions in any of the Federal Courts or in *any Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested,* which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended.

> "(3) When required by the General Assembly by law or joint resolution, or by the Governor, *aid any State's Attorney or other authorized prosecuting officer in investigating, commencing, and prosecuting any criminal suit or action or category of such suits or actions brought by the State in any Court of this State.*

> "(4) Give his opinion in writing whenever required by the General Assembly or either branch thereof, the Governor, the Comptroller, the Treasurer or any State's Attorney on *any legal matter or subject.*"

MD CONST. art. V, § 3(a)(2)-(4) (emphasis added). In order for the Attorney General to discharge the various duties prescribed by Article V, § 3, he or she would have to be not merely steeped in the law, generally, but steeped in Maryland law, both as a member of its bar and as an active practitioner,

who, as a result, has acquired a familiarity with the relevant procedures enveloped therein. Given the Attorney General's responsibility for litigation and transactions on behalf of the State in state courts, coupled with his or her administrative duties, it was quite logical for the framers to require that candidates for the office of the Attorney General to have practiced law in the State for ten years, thereby ensuring that they are conversant and familiar with Maryland law and its practice.

The critical holding in this case is that the relevant condition of eligibility set forth in Article V, § 4, that the person have "practiced law in this State for at least ten years," is not satisfied unless the person (1) has been admitted by this Court to practice law in Maryland for that period, and (2) pursuant to that admission, has, in fact, practiced here for that period. We do not mean, in this Opinion, to determine, in any categorical sense, what activity does or does not constitute practicing law in this State for purposes of Article V, § 4. Two things are important to note, however.

The first is to make clear that we are *not* creating a Federal–State dichotomy. We are *not* holding that a person who has been admitted by this Court to practice in Maryland does not, in fact, practice here simply because he or she practices mostly, or even only, in the Federal courts or devotes his or her practice to matters involving Federal law. The practice of law in Maryland *does* include practice in Federal court and before Federal agencies. Many cases in Federal court, and especially in the Bankruptcy courts, involve Maryland law. Lawyers admitted by this Court to practice in Maryland who are employed by Federal agencies in the State, such as the United States Attorney's Office or the Federal Public Defender's Office, do indeed practice law in Maryland for purposes of Article, V, § 4. A lawyer who works for a Federal agency outside of Maryland, however, will not be regarded as practicing law in this State simply because he or she is authorized by Federal law to represent the Government in litigation in any State, including Maryland, and may, on a

few isolated occasions over an extended period, have some involvement in a case here.

 The second point is that a person may be regarded as practicing law even if the person never appears in *any* court. Lawyers do not have to be litigators, and many are not. It is not the kind of law or the nature of the practice that counts, but only that the person, for at least ten years, have been admitted by this Court to practice law in Maryland and that he or she, for that period of time, has, on a regular basis, done so.

 The problem for Mr. Perez, first, is that he was not admitted by this Court to practice in Maryland for ten years. Second, and equally significant, his work, in Washington, for the Department of Justice from 1989 to 1999 and, on a part-time basis, for the Senate Judiciary Committee, though it included an occasional involvement over that 10–year period with an unquantified but apparently small number of cases in Maryland, does not qualify as practicing law in this State for that period, within the contemplation o f Article V, § 4.

For the foregoing reasons, we reverse the Circuit Court's ruling that Perez has, in fact, "practiced Law in this State for ten years," thereby making him eligible to run for the office of the Attorney General of Maryland. Perez's admission to the Maryland Bar in 2001, coupled with his lengthy, but primarily, federal practice of law is not sufficient to meet the requirements of the office of the Attorney General as prescribed in Article V, § 4 of the Maryland Constitution. We, thus, hold Perez ineligible as a candidate for Attorney General of Maryland in the 2006 Gubernatorial Primary Election.[54]

---

**54.** The concurring opinions merit some response. To be sure, this Court, *see supra* at 193–95, 919 A.2d 1252–54 and the concurrence by Judge Eldridge, *see Abrams v. Lamone,* 398 Md. 146, 220–22, 919 A.2d 1223, 1269–70 (Eldridge, J., concurring) (2007), have contrasted the constitutional requirements of judges and the State's Attorney, and used them as illustrative. Doing so was never intended to indicate, and it certainly does not suggest, that the requirements are interrelated or that they—those for judge and State's Attorney—define those for the Attorney General; they were set for entirely different reasons and to serve

entirely different purposes. Our use of the differences in the language used in those provisions was, as indicated, for comparison and illustrative purposes. The expression "admitted to practice law," as opposed to "practiced Law," is strikingly different, with the latter, contrary to the concurring opinion of Judge Eldridge that "the language of the Maryland Constitution furnishes a stronger basis for this Court to review the professional activity of candidates for judicial office than it does for the Court to review the professional activity of candidates for Attorney General," *id.* at 221–22, 919 A.2d at 1270, imposing an additional, if not a more stringent requirement, for those who would run for the office of the Attorney General. If the framers had intended for the Attorney General to be simply a member of the bar, they could, and most likely would, have said so. By using the word, "practiced," they indicated that much more was required.

The term, "practice of law," as we have already acknowledged, has, in the past, been defined by this Court in a variety of ways. *See supra* at 180–82, 919 A.2d at 1244–45. It is not inconceivable that judicial service might well be included within those definitions. It would be incongruous for one who calls the balls and strikes on those who "practice law" and, thus, occupies an oversight, if not a superior, position not to be credited, for qualification purposes, with practicing him or herself. Judges, like law professors, *see* 68 *Opinions of the Attorney General* at 65 (concluding that Dean of law school had "practiced Law"), are continually involved, if not engaged, in the practice of law, and they use their legal knowledge and skill on a daily basis. *See R.G.S., supra* at 14, 36, 312 Md. at 637–38, 541 A.2d at 983, *citing Gazan v. Heery*, 183 Ga. 30, 187 S.E. 371, 378 (1936) (holding that judicial service "may enhance [a candidate's] qualifications more than an active practitioner at the bar during the same period"). While defining the practice of law to include "judging" is not at all inconsistent with this Court's opinion in this case, it is an issue with which we need not concern ourselves at this time; neither of the candidates for the office of the Attorney General in this year's election were former judges, whose tenure as such is critical to the eligibility determination.

The concurring opinions state that we have unnecessarily decided a constitutional issue. 398 Md. at 215–16, 919 A.2d at 1266 (Eldridge, J., concurring); 398 Md. at 232, 919 A.2d at 1276 (Harrell, J., concurring) (2007). Judge Eldridge's concurrence proffers that "[t]he Court's unanimous decision that Mr. Perez is ineligible to be a candidate for Attorney General, on the ground that he has not been a member of the Maryland Bar for ten years, is dispositive of this case. There is no reason for the Court to go beyond that holding and rule on a perceived additional constitutional requirement under the final clause of Article V, § 4." 398 Md. at 215, 919 A.2d at 1266 (Eldridge, J., concurring), while Judge Harrell states, "Mr. Perez failed to satisfy the threshold requirement of Art. V, Sec. 4 of the Maryland Constitution in that he had not been admitted to the Bar of Maryland for at least ten years. That is as far as the Court need (and ought) go in order to decide the present case. The criterion that is dispositive of this matter is thus straightforward and easy for all to understand." 398 Md. at 232, 919 A.2d at 1276 (Harrell, J., concurring). The concurrences are incorrect. We have interpreted Article V, § 4, nothing more.

Indeed, the only issue this case presents to this Court is a constitutional issue—determining the meaning of the phrase we have construed. The meaning of that phrase, although having two prongs, cannot be, and should not be, determined by parsing or otherwise separating those prongs. This Court's holding is that in order for one to be eligible to hold the office of the Attorney General, one "must be a member of the *Maryland* Bar for at least ten years and must be a practitioner of law *in Maryland* for an identical requisite period." *Supra* at 151, 919 A.2d at 1226; *see supra* at 175, 199, 208, 919 A.2d at 1240–41, 1254–55, 1261. Perez's bar membership may well be independently dispositive in this case, but it is, in fact, but one prong of the interpretation of a single phrase, "practiced Law in this State." Bar membership is not, as the concurrences would have it, the only criterion for eligibility.

Judge Eldridge's concurrence spends a great deal of time focusing on who would not be eligible to hold the office of the Attorney General under this Court's ruling, *see* 398 Md. at 159, 166–67, 919 A.2d at 1230–31, 1235 (Eldridge, J., concurring), however, in doing so, it constantly reads out of the interpretation of the pertinent statutory provision the "in this State" language. He claims that "the opinion's emphasis on being 'steeped in Maryland law' is not consistent with the nature of many modern law practices, which in several respects is nation-wide or world-wide." *Id.* at 159, 919 A.2d at 1230–31. We, however, disagree. At no time has this Court stated, or inferred, that someone lawfully practicing law, *i.e.* admitted to practice by this Court, in this State, whether solely Maryland, or a mixture of Maryland law, provided that it is for the requisite period, would be ineligible to run for, and thus, hold the office of the Attorney General. *See supra* at 207–08, 919 A.2d at 1261.

Judge Eldridge's concurrence goes on to state that the phrase "practiced law" is analogous to "learned in the law." *See* 398 Md. at 220–23, 919 A.2d at 1269–71 (Eldridge, J., concurring) This Court addressed the issue of "learnedness in the law," *see supra* at 195–97, 919 A.2d at 1253–54, and largely does not disagree with what Judge Eldridge is saying. Learnedness, however, simply goes to the bar membership requirement; it does not equal, and cannot be equated to, the practice of law. This is, once again, in line with the framers' intent. *See supra* at 196–97, 919 A.2d at 1254. The references in his concurring opinion to the Constitutional debates, *see* 398 Md. at 224–26, 919 A.2d at 1271–73 (Eldridge, J., concurring), in support of his position—as proof that "practiced law" is the equivalent of "learnedness in the law"—actually only solidifies this Court's position. Judge Eldridge's reference to the debates of the Constitutional Convention of 1864 reinforces the fact that the framers wanted an individual holding the office of the Attorney General to have "practiced law," as they used that phrase numerous times. In fact, it would be impossible for one to "give up" something, which he or she has never done. Judge Eldridge's concurring opinion speaks to the "quality" of the individual whom the framers were seeking, *see id.* at 225–27, 919 A.2d at 1272–73, but that quality was based, by the framers' own words, on the individual's practice experience. *See supra* at 196–97, 919 A.2d at 1254.

Moreover, the cases Judge Eldridge cites do not support the proposition that the two phrases are analogous. In fact, those cases, *see, e.g., Opinion of the Justices*, 279 Ala. 38, 181 So.2d 105, 108–109 (1965);

*Heathscott v. Raff,* 973 S.W.2d 799, 803 (Ark. 1998); *In re Scarrella,* 300 Minn. 500, 221 N.W.2d 562 (1974); *In re Daly,* 294 Minn. 351, 200 N.W.2d 913, 917, 920 (1972), *cert. denied,* 409 U.S. 1041, 93 S.Ct. 528, 34 L.Ed.2d 491 (1972); *State ex rel. Jack v. Schmahl,* 125 Minn. 533, 147 N.W. 425 (1914); *Pearce v. Meier,* 221 N.W.2d 94, 98 (N.D.1974); *Freiler v. Schuylkill County,* 46 Pa.Super. 58 (1910); *Jamieson v. Wiggin,* 12 S.D. 16, 80 N.W. 137 (1899), are not contrary to what we have said on the issue. They simply define "learned in the law" in terms of bar membership; they do not suggest, not to mention demonstrate, in any manner, that the phrase should, and can be, used interchangeably with "practiced law."

In addition, those cases cited by him which required that a candidate have "practiced law" similarly offer little assistance. In *Whitmer v. Thurman,* 241 Ga. 569, 247 S.E.2d 104 (1978), the court applied a constitutional provision, also codified by statute, prohibiting a person from being a district attorney "unless at the time of his election he shall have ... practiced law for three years next preceding his election." The trial court having ruled that he had not met the three-year practice requirement, the appellant proffered his admission to the California Bar, arguing that it should be considered in determining the practice time requirement. The Supreme Court of Georgia rejected that argument, reiterating its prior holding on the issue, "that the language 'shall have practiced' contemplated lawful practice and defined lawful practice as the practice of law as 'an active member of the State Bar of Georgia in good standing,' " *quoting Wallace v. Wallace,* 225 Ga. 102, 166 S.E.2d 718, 720 (1969), and, particularly relevant to this case, stating:

"Appellant's argument that the practice requirement include legal practice in other states directly conflicts with the judicial policy of Georgia that lawyers licensed to practice in other states will not be admitted to practice law in Georgia on the basis of comity. Rule 2–101 of the Rules and Regulations for Organization and Government of the State Bar of Georgia, Title 9 Appendix of the Georgia Code Annotated.

"It is clear that the intent of the legislature when it imposed this practice requirement was to insure that the individuals who were elected to the office of district attorney would be experienced in the practice of law before the courts in which they would be required to perform their functions as district attorneys. It would be contrary to this intent to allow individuals who have not been licensed to practice before our superior courts to include their practice time in other states as partial satisfaction of Code §§ 2–4201 and 24–2901, the three-year practice requirement."

*Whitmer,* 247 S.E.2d at 106.

In *Littlejohn v. Cleland,* 251 Ga. 597, 308 S.E.2d 186 (1983), the Supreme Court of Georgia examined the qualifications of a candidate who was "not [then] nor ha[d] he ever been a member of the State Bar of Georgia," 308 S.E.2d at 187, to run for office as a Justice of the Supreme Court of Georgia. The State Constitution provided that "[n]o person shall be a Justice of the Supreme Court ... unless, at the time of his election, he shall ... have practiced law for seven years." *Id.* (brackets in original). The court held the candidate constitutionally ineligible to run, explaining "[s]ince a person may not practice law

Concurring Opinion by ELDRIDGE, J., which RAKER, J., joins; HARRELL and GREENE, JJ., join in Parts I and II only.

ELDRIDGE, J., concurring:

I agree with the result in this case on the ground that Mr. Perez has not been a member of the Maryland Bar for ten years. I disagree, however, with Chief Judge Bell's opinion which is joined by two other members of the Court.

Article V, § 4, of the Constitution of Maryland sets forth the qualifications for a person to be eligible for the office of Attorney General of Maryland. Section 4 provides (emphasis added):

**"Section 4. Qualifications of Attorney General.**

No person shall be eligible to the office of Attorney General, who is not a citizen of this State, and a qualified voter therein, and has not resided and *practiced Law in this State for at least ten years.*"

---

unless he or she is a member of the State Bar, a person cannot qualify for an office requiring law practice unless he or she is a member of the State Bar." *Id.* In context, the court did not, as Judge Eldridge's concurring opinion would have it, define "practiced law" as requiring bar membership only. It was the candidate's complete lack of bar membership that led the court to conclude that the candidate "[did] not meet the constitutional requirement to seek or hold the position of Associate Justice of the Supreme of Georgia," *id.,* and that is a far cry from defining what it means to practice law when someone is actually a member of the bar of a particular state. *See also Daly,* 200 N.W.2d at 914 (recognizing that none of the persons seeking to become judge was admitted to the Minnesota Bar).

Furthermore, so far as appears in the record of the cases cited in Judge Eldridge's concurring opinion, the only provision bearing on the meaning of the phrase being construed was the constitutional provision itself. Unlike in the case *sub judice,* there does not appear to have been other constitutional provisions containing different, but related, language which bore on and informed the meaning of the subject provision. In the case *sub judice,* the interpretation of Article V, § 4, as stated earlier, is informed by Article V, § 10 and Article IV, § 2, *supra* at 193–96, n. 54 at 208–12, 919 A.2d at 1252–54, n. 54 at 1261–64, both of which define the qualification for office in terms of bar admission, rather than "practice of law." Not to consider these provisions would run afoul of a basic principle of constitutional interpretation.

The dispute in this case is over the meaning of the final clause in § 4, containing the single professional requirement that, to be eligible for the office of Attorney General, a person must have "practiced Law in this State for at least ten years."

Chief Judge Bell's plurality opinion takes the position that the final clause in § 4 actually contains two professional requirements, namely that a person, to be eligible for the office of Attorney General, (1) must have for ten years been a member of the Maryland Bar and (2) must have for ten years engaged in professional activity in Maryland which is sufficient, in this Court's view, to be deemed the "practice of law" in Maryland. The opinion states (opinion at 196–97, 919 A.2d at 1254) (emphasis added):

"Thus, we hold, a candidate for the office of the Attorney General must be *both* a member of the Maryland Bar for ten years *and* a practitioner of law in Maryland for ten years."

*See also* opinion at 150–51, 919 A.2d at 1225–26. At other places, the plurality opinion says that a candidate for Attorney General must "have more qualification than simply a bar membership" and must be "experienced in its [the law's] practice" (opinion at 194–95, 919 A.2d at 1253). The three judges constituting the plurality "do not agree" that, "if Perez had been a member of the Maryland Bar, rather than the New York bar for the past 17 years and possessed the same professional qualifications, he would be eligible to hold the office of Attorney General" (*id.* at 195, n. 47, 919 A.2d at 1253, n. 47). The plurality opinion states "that a candidate for the office of the Attorney General must be an *experienced* attorney" (*id.* at 197, n. 49, 919 A.2d at 1254, n. 49, emphasis added), and that a person, to be eligible for the office of Attorney General, must "be not merely steeped in the law, generally, but steeped in Maryland law, both as a member of its bar and as an active practitioner" (*id.* at 206–07, 919 A.2d at 1261). Chief Judge Bell concludes that, even if Mr. Perez had been a member of the Maryland Bar from 1989 to 1999, his work for the Department of Justice and the Senate Judi-

ciary Committee "does not qualify as practicing law in this State for that period, within the contemplation of Article V, § 4" (*id.* at 207–08, 919 A.2d at 1261).

## I.

As previously indicated, I agree with the plurality that the final clause of Article V, § 4, of the Maryland Constitution means that, to be eligible for the office of Attorney General, a Maryland resident is required to have been a member of the Maryland Bar for ten years. It is true that § 4 does not expressly require Maryland Bar membership; consequently, in my view, § 4 is to some extent ambiguous. Nevertheless, when § 4 is read in conjunction with the constitutional duties of the Attorney General prescribed in Article V, § 3, of the Maryland Constitution, admission to the Maryland Bar would seem to be required. The constitutional duties of the Attorney General, which have remained essentially unchanged since 1867, could only be performed by a member of the Maryland Bar.

Furthermore, except for an out-of-state attorney being given permission by the court to try or argue one specific case, the concept of an attorney legally practicing law in a state, without being a member of that state's bar, was likely unknown in 1864 and 1867 when the language of Article V, § 4, was formulated and adopted. The statute authorizing a United States Department of Justice attorney to represent the United States in, *inter alia,* "the courts of any State," was not enacted until 1870. *See* Act of June 22, 1870, Ch. 150, 16 U.S. Statutes At Large 162, 163 (1870). Cases dealing with the concept of legally practicing law in certain fields, in a state where the attorney was not a member of the bar, came much later. *See, e.g., Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); *Attorney Grievance Commission v. Bridges,* 360 Md. 489, 508–511, 759 A.2d 233, 243–245 (2000); *Kennedy v. Bar Ass'n,* 316 Md. 646, 661–668, 561 A.2d 200, 208–211 (1989), and cases there cited.

Consequently, the final clause of Article V, § 4, should be read as if it said "and [admitted to] practice [ ] Law in this State for at least ten years." Since Mr. Perez has not been a member of the Maryland Bar for ten years, he does not at this time meet the professional eligibility requirement set forth in

the final clause of Article V, § 4, of the Maryland Constitution.[1] In my view, this is the *only* proper basis for this Court's prior order that Mr. Perez does not meet the eligibility requirements specified in Article V, § 4, of the Maryland Constitution.

## II.

Preliminarily, it is puzzling why the three-judge plurality ventures beyond the holding that Mr. Perez fails to meet the eligibility requirements of Article V, § 4, on the ground that he has not been a member of the Maryland Bar for ten years.

"This 'Court's established policy is to decide constitutional issues only when necessary.' " *Insurance Commissioner v. Equitable,* 339 Md. 596, 614, 664 A.2d 862, 871 (1995), quoting *Mercy Hospital v. Jackson,* 306 Md. 556, 565, 510 A.2d 562, 566 (1986). *See also Christopher v. Department of Health,* 381 Md. 188, 217, 849 A.2d 46, 63 (2004); *Murrell v. Baltimore,* 376 Md. 170, 191 n. 8, 829 A.2d 548, 560 n. 8 (2003); *Baltimore Sun v. Baltimore,* 359 Md. 653, 659, 755 A.2d 1130, 1134 (2000), and cases there cited.

The Court's unanimous decision that Mr. Perez is ineligible to be a candidate for Attorney General, on the ground that he has not been a member of the Maryland Bar for ten years, is

---

1. During the oral argument before this Court in the present case, counsel for the appellee Perez was asked by the Court whether Mr. Perez had challenged in the trial court, or was challenging in this Court, the validity under the United States Constitution of the final clause in Article V, § 4, of the Maryland Constitution, providing that the Attorney General must have "resided and practiced Law in this State for at least ten years." Counsel's attention was specifically directed to the federal constitutional equal protection principles applied in *Board v. Goodsell,* 284 Md. 279, 286–293, 396 A.2d 1033, 1036–1040 (1979), and the Supreme Court opinions and other opinions discussed in *Goodsell. See also Green Party v. Board of Elections,* 377 Md. 127, 162–163, 832 A.2d 214, 234–235 (2003).

Counsel for Mr. Perez responded by stating that Mr. Perez had not challenged in the trial court, and was not challenging in this Court, the validity of Article V, § 4, under the Constitution of the United States. Consequently, no issue regarding the federal constitutional validity of Article V, § 4, is directly presented in this case.

dispositive of this case. There is no reason for the Court to go beyond that holding and rule on a perceived additional constitutional requirement under the final clause of Article V, § 4.

The plurality opinion, however, goes beyond the dispositive issue of Maryland Bar membership and states that Mr. Perez, even if he had been a ten-year member of the Maryland Bar, would still be ineligible under Article V, § 4, because his professional activity did not constitute "practicing law in this State" for ten years. (opinion at 207–08, 919 A.2d at 1261). The plurality's justification for unnecessarily deciding this latter constitutional issue is that "[w]e have interpreted Article V, § 4, nothing more" and that the bar membership issue is "but one prong of the interpretation of a single phrase, "practiced Law in this State.' " (Opinion at 208–12, n. 54, 919 A.2d at 1261–64, n. 54). Under the circumstances here, this is not a valid justification for deciding the second constitutional issue.

Many state and federal constitutional requirements are set forth as single phrases. For example, the constitutional phrases "due process of law" or "equal protection of the laws" or "twice put in jeopardy" are each single phrases. Nevertheless, if a court interprets and applies one of these phrases to decide that particular action violates the constitutional provision in one respect, and if that decision is dispositive of the case before the court, it is not necessary for the court to further interpret the single phrase and decide whether the action violates the same phrase in some other respect. Exploring all aspects of a constitutional phrase may be appropriate for a treatise or law review article. It does not, however, reflect the type of judicial restraint which should characterize appellate opinions.

Not only does Chief Judge Bell's opinion reach a constitutional issue unnecessarily, but it rules upon an issue that was not presented to the Court. The appellant-petitioner, Steven N. Abrams, presented the following two questions to the Court:

## "QUESTIONS PRESENTED

"I. Does the Constitution of Maryland require that a candidate for Attorney General be admitted to practice law before all of the courts of the State courts of Maryland for at least ten years prior to his or her commencing their term as Attorney General?

"II. Does the State Board of Elections have any duty to inquire into the representations made by a candidate for any office in Maryland when the candidate certifies under oath to the State Board of Elections that he or she meets the Maryland Constitutional requirements?"

Mr. Abrams's sole constitutional argument was that Mr. Perez was ineligible to be Attorney General because he had not been a member of the Maryland Bar for ten years. Mr. Abrams stated in his brief (emphasis added):

"In short, because the phrase 'practiced Law in this State' has a well-understood, common, and ordinary meaning that necessarily implies admission to practice law in Maryland, that meaning should be adopted, *and there should be no need for further analysis.*"

During oral argument before this Court, the following colloquy occurred:

"**Judge Cathell:** If a person passes the Maryland Bar and is admitted to the Maryland Bar by this Court, has a job right out of law school with a federal judge in the District of Columbia, goes directly to the District of Columbia and works for that federal judge. Then, gets a job directly from there with some federal agency in the District of Columbia and has never, twenty years later, actually practiced law in the geographical confines of Maryland, but he has been a member of the Maryland Bar.

"**Mr. Abrams:** And maintained his membership over that ten year period.

"**Judge Cathell:** Granted.

"**Mr. Abrams:** Right.

"**Judge Cathell:** Is he practicing law in Maryland?

"**Mr. Abrams:** I would argue, your Honor, that he is both practicing law, and he meets the requirement of initiating the practice of law in Maryland and continuously practicing law under that requirement for that ten year period. . . ."

There was no contention before this Court that Article V, § 4, embodied two distinct professional requirements. The only constitutional issue raised and argued in this Court was whether Article V, § 4, required membership in the Maryland Bar for ten years. Under the circumstances of this case, the judges of this Court should not reach any other constitutional issue. *See* Maryland Rules 8–131 and 8–504; *Simmons v. State,* 392 Md. 279, 292–293 n. 1, 896 A.2d 1023, 1031, n. 1 (2006); *Sweeney v. Savings First Mortgage,* 388 Md. 319, 325 n. 8, 879 A.2d 1037, 1040 n. 8 (2005); *Oak Crest v. Murphy,* 379 Md. 229, 241, 841 A.2d 816, 823 (2004); *Moosavi v. State,* 355 Md. 651, 660, 736 A.2d 285, 290 (1999); *Langworthy v. State,* 284 Md. 588, 595–596, 399 A.2d 578, 582–583 (1979), *cert. denied,* 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981).

### III.

Although I do not agree with three judges reaching a constitutional issue unnecessarily, and particularly one which was not raised on appeal, I shall comment on that issue "only because the [plurality] of the Court has decided to do so." *Montgomery County v. McNeece,* 311 Md. 194, 213, 533 A.2d 671, 680 (1987) (concurring opinion). I strongly disagree with Chief Judge Bell's second constitutional ruling that, in addition to membership in the Maryland Bar for ten years, a ten-year resident of Maryland, to be eligible for the office of Attorney General, must also have engaged in such professional activity that, in the judgment of the judiciary, renders the person "a practitioner of law in Maryland for ten years" or an "active practitioner" who is "steeped in Maryland law." (opinion at 197, 206–07, 919 A.2d at 1254, 1260).

This position, adopted by three members of the Court, is neither supported by the language of Article V, § 4, nor

supported by the constitutional history of that provision. The position also violates the principle that provisions should not be interpreted in a manner leading to unreasonable results. Numerous long-time Maryland lawyers could be disqualified from being Attorney General if the views of the three judges were to prevail in the future. Another result of the plurality opinion would be that this Court, every four years, might have to evaluate the nature or quality of the legal work performed in Maryland over a ten-year period, by each candidate for Attorney General, to determine whether such work meets the standard of actively practicing Maryland law in this State. Moreover, as Judges Harrell and Greene intimate in their concurring opinion, the plurality's requirements concerning the nature or quality of the law practice by a ten-year member of the Maryland Bar, in order for that member to be a candidate for Attorney General, would be difficult, if not impossible, for the State Board of Elections to administer. Finally, the plurality's interpretation of the state constitutional provision might raise questions as to its validity under the federal constitution.

(a)

Article V, § 4, setting forth the single professional requirement that the Attorney General must have "practiced law in this State for at least ten years," contains no language furnishing any basis for a court to review and evaluate the ten-year professional "experience" of a Maryland Bar member seeking to become Attorney General, or reject a candidate for the office of Attorney General on the grounds that he was not sufficiently "active" as a "practitioner" or not sufficiently "steeped in Maryland law." A member of the Maryland Bar representing the United States Government is "practicing law." [2]

---

**2.** It should be noted that Article 2 of the Maryland Declaration of Rights mandates that federal law "shall be the Supreme Law of the State. . . ." Consequently, "federal law" is "Maryland law." *See R.A. Ponte Architects, Ltd. v. Investors' Alert,* 382 Md. 689, 698–701, 857 A.2d 1, 6–8 (2004), and cases there cited.

The plurality opinion, at one place, correctly acknowledges that the phrase " 'practice of law' " encompasses "a variety of activities" (opinion at 180–81, 919 A.2d at 1244). The opinion goes on to discuss several of this Court's opinions holding that the meaning of the phrase varies depending upon the context. (*Id.* at 180–86, 919 A.2d at 1244–48). Then, somewhat inconsistently, the plurality opinion states that the meaning of the phrase " 'practice law in this State' has remained consistent" and that the phrase "is clear and unambiguous." (*Id.* at 186, 188 n. 42, 919 A.2d at 1247–48, 1248 n. 42). Later, the opinion adopts a narrow definition of the phrase, taking the position that Mr. Perez would not have been practicing law in this State even if he had been a member of the Maryland Bar for ten years (opinion at 208, 919 A.2d at 1261), and that only a lawyer who is "steeped in Maryland law" as an "active practitioner" (*id.* at 210–11, 919 A.2d at 1263) is eligible to be Attorney General.

This Court's prior opinions have consistently taken the position that there are many different definitions of the phrase "practice of law," depending upon the context and the circumstances. *See In re Application of Mark W.,* 303 Md. 1, 7–18, 491 A.2d 576, 579–584 (1985) ("Numerous definitions of what constitutes practice of law are to be found." * * * "These definitions have arisen in a variety of circumstances." * * * " '[A]ttempts to define the practice of law have not been particularly successful' "), and cases there cited. The predominant professional activities of many lawyers, such as legal research, teaching law, etc., are regarded as the "practice of law," although such activities would not constitute the "unauthorized practice of law" if done by non-lawyers. As indicated previously, the plurality's limited definition of the phrase might render a large number of Maryland lawyers ineligible to be Attorney General. Moreover, despite the plurality's disclaimer, the opinion's emphasis on being "steeped in Maryland law" is not consistent with the nature of many modern law practices, which in several respects is nation-wide or world-wide.

As earlier discussed, the final clause of Article V, § 4, when considered in light of Article V, § 3, reasonably means that a candidate for the office of Attorney General must be admitted

to "practice[ ] Law in this State for a least ten years." Except for the ten-year period, this interpretation makes the professional qualification for Attorney General the same as the professional qualifications for judges [3] and State's Attorneys.[4] Nothing in the language of Article V, § 4, requires a professional qualification over and above membership in the Maryland Bar for ten years.[5]

In fact, the language of the Maryland Constitution furnishes a stronger basis for this Court to review the professional activity of candidates for judicial office than it does for the Court to review the professional activity of candidates for Attorney General. Article IV, § 2, of the Maryland Constitution, unlike Article V, § 4, contains more than one professional qualification for judges. Article IV, § 2, requires that district, circuit, and appellate judges "be selected from those [1] who have been admitted to practice law in this State, and [2] who are most distinguished for integrity, wisdom and sound legal

---

3. Article IV, § 2, of the Maryland Constitution provides as follows:
 "**Section 2. Qualifications of judges.**
 "The Judges of all of the said Courts shall be citizens of the State of Maryland, and qualified voters under this Constitution, and shall have resided therein not less than five years, and not less than six months next preceding their election, or appointment, as the case may be, in the city, county, district, judicial circuit, intermediate appellate judicial circuit or appellate judicial circuit for which they may be, respectively, elected or appointed. They shall be not less than thirty years of age at the time of their election or appointment, and *shall be selected from those who have been admitted to practice law in this State, and who are most distinguished for integrity, wisdom and sound legal knowledge.*" (Emphasis added).

4. Article V, § 10, of the Maryland Constitution states:
 "**Section 10. Qualifications of State's Attorneys.**
 "No person shall be eligible to the office of State's Attorney, who has not been admitted to practice Law in this State, and who has not resided, for at least two years, in the county, or city, in which he may be elected."

5. Article V, § 4, contains two ten-year requirements, namely residence in Maryland for ten years and membership in the Maryland Bar for ten years. The plurality would impose a third ten-year requirement, *i.e.*, activity for ten years which meets the three judges' concept of practicing law.

knowledge." No one has ever suggested that this Court is authorized to review the careers of judicial candidates to determine if they meet the qualitative standards contained in the last clause of Article IV, § 2. Instead, it is for the Governor and/or the voters to decide upon such qualifications. Similarly, if a ten-year Maryland resident, seeking the office of Attorney General, has for ten years been a member in good standing of the Maryland Bar, it should be for the voters to decide whether the candidate's professional activity is sufficient for him or her to be elected to the office of Attorney General.

The words "practiced law," or the more frequently used phrase "learned in the law," found in state constitutions, have regularly been construed to mean simply admission to the bar of the particular state involved. To the extent that such constitutional phrases have been viewed as providing for a higher level or quality of legal experience, courts have held that the matter is for the voters and/or appointing authorities and not a subject for judicial review. *See, e.g., Opinion of the Justices,* 279 Ala. 38, 40–42, 181 So.2d 105, 108–109 (1965) ("The phrase 'learned in the law' as used by the framers of the Constitution" did " 'not contemplate[ ] that . . . qualifications of a candidate . . . should be determined by a referee or jury in a contested election case,' " but means "lawyers admitted to practice in Alabama"); *Heathscott v. Raff,* 334 Ark. 249, 257, 973 S.W.2d 799, 803 (1998) ("Based on the American and English use of the phrase, . . . we hold that the constitutional qualification phrase 'learned in the law' means an attorney licensed to practice law in the state");[6] *Littlejohn v. Cleland,* 251 Ga. 597, 598, 308 S.E.2d 186, 187 (1983) (Constitutional phrase " 'shall . . . have practiced law for seven years' " means that "a person cannot qualify . . . unless he or she is a member of the State Bar"); *Whitmer v. Thurman,* 241 Ga. 569, 570–571, 247 S.E.2d 104, 106 (1978) (Constitutional eligibility re-

---

**6.** As the Supreme Court of Arkansas discussed in the *Heathscott* case, 334 Ark. at 253, 973 S.W.2d at 802, similar language appeared in the Magna Carta of 1215, and the specific phrase "learned in the law" was used in a 1344 English statute.

quirement that district attorney " 'shall have practiced law for three years' " means a person must have "been licensed to practice before our superior courts"); *Wallace v. Wallace*, 225 Ga. 102, 166 S.E.2d 718 (1969) (same); *In re Candidacy of Daly*, 294 Minn. 351, 357, 362, 200 N.W.2d 913, 917, 920, *cert. denied*, 409 U.S. 1041, 93 S.Ct. 528, 34 L.Ed.2d 491 (1972) ("To be learned in the law means that the person must have been" admitted to the bar and must not be suspended or disbarred); *In re Scarrella*, 300 Minn. 500, 221 N.W.2d 562 (1974) (same); *State ex rel. Jack v. Schmahl*, 125 Minn. 533, 147 N.W. 425 (1914) (same); *Pearce v. Meier*, 221 N.W.2d 94, 98 (N.D.1974) ("Our view is that the phrase 'learned in the law' is synonymous with and means 'admitted to the bar' or 'admitted to practice' by the Supreme Court of our State"); *Freiler v. Schuylkill County*, 46 Pa.Super. 58 (1910) (same); *Jamieson v. Wiggin*, 12 S.D. 16, 80 N.W. 137 (1899) (same).

The type of qualitative judicial review, under Chief Judge Bell's opinion, of a candidate's professional experience to determine his or her eligibility for constitutional office, is unprecedented as a matter of Maryland law. It is contrary to the cases in other jurisdictions. As long as a candidate for Attorney General has been a member of the Maryland Bar, in good standing, for ten years, the judiciary should not further review the candidate's professional activity. Such review is a matter for the voters.

(b)

The constitutional history relied on in the plurality opinion does not support its conclusion that the final clause of Article V, § 4, contains two distinct professional qualifications, both of which are judicially reviewable. Although I agree that the constitutional history supports the holding that a candidate for Attorney General must have been a member of the Maryland Bar for ten years, the history actually refutes the plurality's position that there is an additional professional qualification, pursuant to which this Court may evaluate the professional activity of an Attorney General candidate, who is a ten-year member of the Maryland Bar, to determine whether the

candidate is sufficiently "experienced" and is an "active practitioner" who is "steeped in Maryland law."

Chief Judge Bell points out that an earlier proposed version of Article V, § 4, contained two expressed professional requirements, namely that the Attorney General have "been admitted to practice law in the State" and that the Attorney General had "practiced law" for a certain number or years. (Opinion at 190, 919 A.2d at 1250). The plurality opinion then observes that the two professional eligibility requirements "were merged into a single requirement" (*ibid.*). The opinion goes on to say that it "interprets the framers' actions as an attempt to avoid being repetitive" (*id.* at 191–92, 919 A.2d at 1251).

I fully agree with the plurality that the bar admission requirement and the practice of law requirement were viewed as meaning the same thing and were merged into a single requirement to avoid repetition. Later in the opinion, however, Chief Judge Bell takes the position that there are two separate professional eligibility requirements and that the final clause of Article V, § 4, means that "the Attorney General must be both a member of the Maryland Bar for ten years and practitioner of law in Maryland for ten years." (*Id.* at 196–97, 919 A.2d at 1254). This later position taken by the plurality is flatly inconsistent with its earlier position based on the legislative history. In my view, the sparse legislative history of the provision indicates that there is a single professional eligibility requirement in Article V, § 4, which is membership in the Maryland Bar for ten years.

The plurality also relies upon the debates at the 1864 Constitutional Convention regarding the salary of the Attorney General and the ten-year bar membership. Thus Delegates Negley and Bond stated (*The Debates of the Constitutional Convention of 1864* at 1460):

"MR. NEGLEY. I am as much in favor of keeping down salaries as anybody. But you better strike out this provision altogether than to put in an inadequate salary. Because if you put in an insufficient salary, you cannot get the services of a man whose services will be worth anything.

And rather than have a second or third rate man in the office, you better strike out the provision entirely.

"Three thousand dollars a year is little enough for such an officer. They are the younger members of the bar who are elected State's attorneys, and they will be continually calling upon the attorney general for his opinion, and perhaps require his personal assistance at the trial. He is to be besides the legal adviser of the governor, comptroller, treasurer, and even of the legislature; he will have his hands full. Three thousand dollars a year is not too large. Let us have salary enough to secure a good officer, or let us have none at all.

"MR. BOND. In my judgment, a salary of three thousand dollars a year is little enough for a good lawyer. The attorney general, by this report, is forbidden to receive any other fee or compensation whatever, except his salary. As has been well remarked by the gentleman from Washington county (Mr. Negley,) you better strike out this provision entirely, than not get a good man in this office; and you cannot get a good one, unless you give him a good compensation."

Delegate Stirling commented (*id.* at 1460–1461):

"MR. STIRLING. I think the views of my friend from Washington (Mr. Mayhugh) are correct so far as the general principle is concerned. I have myself on several occasions voted here not to put these salaries too high. I have no objection to putting the salary of the attorney general at $2,500, though I think that is full low. But I suggested that sum, because I know there is an indisposition to pay large salaries.

\* \* \*

"Now you must have for attorney general a man who is accustomed to trying cases, or he will not be fit for the office. And any man who has a good practice trying cases makes a considerable sum of money every year by trying cases against the State. But if such a man accepts this

office, he must give up entirely that portion of his practice. Taking all these things into consideration, I believe a competent attorney general at three thousand dollars a year will be a saving to the State at least a thousand dollars a year."

Later, with regard to the ten-year requirement, Delegate Smith emphasized the importance of the position and the type of lawyer who should be Attorney General.

It is important to keep in mind what these debates related to and what they did not. The debates concerned the *salary* needed to *attract* good and experienced lawyers and concerned the ten-year bar admission requirement. The delegates were *not* suggesting that a ten-year member of the Maryland Bar must have a certain type or quality of experience in order to be eligible to seek the office of Attorney General. On the contrary, they were afraid that, if the salary were too low, the highest quality Maryland lawyers would not be candidates for the office and that lesser quality attorneys would be candidates and would be elected Attorney General.

The need to attract higher quality candidates by setting a high salary is inconsistent with the notion that a court could declare ineligible ten-year members of the Maryland Bar based upon the court's evaluation of their professional experience. Instead of prescribing qualitative experience requirements which might be judicially reviewable, the framers of Article V, § 4, sought to attract high quality applicants for the office of Attorney General by setting what was then considered a high salary and by a ten-year Maryland bar membership requirement.

Consequently, the constitutional history discussed in the plurality opinion undermines the opinion's conclusion that a court can review the quality or nature of the professional activity of a ten-year Maryland Bar member.

(c)

This Court, time after time, has emphasized that, in interpreting enactments and other legal provisions, we "give them their 'most reasonable interpretation, in accord with logic and

common sense,' " and that we "avoid constructions that are 'illogical, unreasonable, or inconsistent with common sense.' " *Johnson v. Nationwide*, 388 Md. 82, 89, 878 A.2d 615, 619 (2005), quoting *Greco v. State*, 347 Md. 423, 429, 701 A.2d 419, 422 (1997), and *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994). The Court refrains from a construction of enactments that leads to "consequences [that] would be quite strange." *Ponte v. Investors' Alert*, 382 Md. 689, 717, 857 A.2d 1, 18 (2004). *See also, e.g.,* *Stoddard v. State*, 395 Md. 653, 663, 911 A.2d 1245, 1250 (2006); *Twine v. State*, 395 Md. 539, 550, 910 A.2d 1132, 1138 (2006); *Oakland v. Mountain Lake*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Gwin v. Motor Vehicle Administration*, 385 Md. 440, 462, 869 A.2d 822, 835 (2005). This principle is violated by the plurality's interpretation of Article V, § 4, requiring something more than ten-year Maryland residency and ten-year membership in the Maryland Bar for one to be Attorney General.

The plurality opinion could result in the exclusion of numerous Maryland lawyers who have been, for ten years or more, Maryland residents and members of the Maryland Bar. For example, it would apparently render ineligible for Attorney General ten-year Maryland residents and Maryland lawyers who, for part of the ten-year period, were employed by federal government agencies in the District of Columbia or law firms in the District of Columbia or in nearby states.[7]

---

7. Another group of ten-year Maryland Bar members who might be ineligible to be Attorney General under the plurality opinion consists of appellate, circuit, and district judges who did not practice law in Maryland, in accordance with the plurality's standards, for ten years prior to becoming judges. Although the Chief Judge's opinion says that "[i]t is not inconceivable that judicial service might well be included" in its definition of "practice of law" (opinion at 208–09, n. 54, 919 A.2d at 1261–62, n. 54), it is clear that judges are by law prohibited from practicing law. Maryland Code (1974, 2006 Repl.Vol.), § 1–203(a) of the Courts and Judicial Proceedings Article, provides in pertinent part as follows:

"[N]o judge may during his term of office practice law, maintain an office for the practice of law, or have any interest in an office for the practice of law, whether conducted in whole or in part by himself or by others. * * * "

The plurality opinion, if ever adopted by the majority of this Court, could also lead to an unprecedented and totally unreasonable non-judicial function to be performed by this Court every four years. To reiterate, the opinion takes the position that, even if Mr. Perez "had been a member of the Maryland Bar, rather than the New York [B]ar for the past 17 years and possessed the same qualifications," his practice would "not qualify as practicing law in this State for [ten years], within the contemplation of Article V, § 4." (Opinion at 195, n. 47, 208–09, 919 A.2d at 1253, n. 47, 1261–62). This conclusion is based on the plurality's evaluation of the nature of Mr. Perez's professional activity, upon discounting Mr. Perez's law practice in Maryland as an attorney for the United States Department of Justice, and upon the view that "appearance in Maryland state courts 'to attend to the interests of the United States'" is *not* the "practice [of] law in this State for purposes of Article V, § 4." (*Id.* at 199–200, 919 A.2d at 1256).

The type of professional evaluation indulged in by the plurality could well set a precedent for future elections for Attorney General. Every four years, long-time members of the Maryland Bar, filing certificates of candidacy for the office of Attorney General, could be challenged in court on the theory that their ten years or more professional activity in Maryland was qualitatively insufficient for them to be eligible Attorney General candidates. In light of the nature of such cases, they will always find their way to this Court. I cannot believe that the framers of Article IV or Article V, § 4, of the Maryland Constitution ever contemplated that the courts should be involved in this type of politically-charged evaluation activity. This is for the electorate; it is not the appropriate business of the judiciary.

(d)

It is a settled " 'principle that a court will, whenever reasonably possible, construe and apply [an enactment] to avoid casting serious doubt upon its constitutionality.' " *Burch v. United Cable Television*, 391 Md. 687, 703, 895 A.2d 980, 989 (2006), quoting *Yangming Marine Transport v. Revon Products U.S.A., Inc.*, 311 Md. 496, 509, 536 A.2d 633, 640

(1988). "[T]his Court will prefer an interpretation that allows us to avoid reaching a constitutional question." *Nationsbank v. Stine,* 379 Md. 76, 86, 839 A.2d 727, 733 (2003). As Chief Judge Murphy for the Court stated in *Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93, 104–105 (1994), "[i]f a [provision] is susceptible of two reasonable interpretations, one of which would involve a decision as to its constitutionality, the preferred construction is that which avoids the determination of constitutionality." *See also, e.g., Rios v. Montgomery County,* 386 Md. 104, 121, 872 A.2d 1, 10 (2005); *Ponte v. Investors' Alert, supra,* 382 Md. at 718, 857 A.2d at 18; *Edwards v. Corbin,* 379 Md. 278, 293–294, 841 A.2d 845, 854 (2004); *Montrose Christian School v. Walsh,* 363 Md. 565, 594–595, 770 A.2d 111, 128 (2001).

It is also a well-established principle of constitutional law that "[a] state regulation is invalid . . . if it . . . discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States,* 495 U.S. 423, 435, 110 S.Ct. 1986, 1995, 109 L.Ed.2d 420 (1990), and cases there cited. *See also, e.g., Harper v. Virginia,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 817, 109 S.Ct. 1500, 1509, 103 L.Ed.2d 891 (1989) (state enactment "favoring retired state and local government employees over retired federal employees" held unconstitutional).

Under the plurality opinion, a Maryland attorney employed by the Maryland Attorney General's office, a Maryland State's Attorney's office, a Maryland county attorney's office, or another Maryland government agency, would be practicing law in Maryland for purposes of eligibility under Article V, § 4. On the other hand, a Maryland attorney employed by the United States Department of Justice or other federal agency located in the Nation's Capital, and working in Maryland as well as elsewhere, would not be practicing law in Maryland under the plurality opinion.

The discrimination between state government employment and federal government employment, under the plurality's

interpretation of Article V, § 4, and would present a serious issue as to the constitutionality of Article V, § 4, under the United States Constitution. Under settled principles, an interpretation of Article V, § 4, which avoids this federal constitutional issue would be preferred.

Judge Raker joins this opinion, and Judges Harrell and Greene join Parts I and II of this opinion.

Concurring Opinion by WILNER, J.

Concurring Opinion by WILNER, J.

I concur with and join Chief Judge Bell's Opinion and write separately only to respond to Judge Eldridge's peculiar conclusions that the Constitution does not mean what it plainly says and that, even if it did, the Court shouldn't say so.

Article V, § 4 of the Constitution states with marvelous clarity and simplicity that a person is not eligible to the office of Attorney General who has not "practiced law in this State for at least ten years." Now, one may fairly debate whether, for purposes of that provision, certain conduct constitutes the practice of law in this State—teaching law at a law school, for example, or serving as a judge or arbitrator, or administrative law judge or hearing examiner. But to conclude that it does not require the practice of law at all in Maryland is simply extraordinary.

Judge Eldridge thinks that all that is required is that a person have been admitted to the Maryland Bar for ten years. That is not what the Constitution says, however. As Chief Judge Bell points out, in other sections, the Constitution explicitly makes membership in the Maryland Bar the effective criterion. In defining the qualifications of the Attorney General, however, the People deliberately chose a different requirement. Upon the recommendation of the Convention delegates, they determined that, to be eligible for the office of Attorney General, a person must have actually practiced law in this State for ten years.

Under Judge Eldridge's view, a person could pass the Bar Examination, be admitted to practice, open a liquor store, never do anything that could conceivably, under any definition, constitute the practice of law, become politically active, and ten years later be elected as Attorney General of Maryland. The notion that that is what the Convention delegates or the People had in mind in 1864 and 1867 is really absurd. It is belied by the plain language of the Constitutional provision and is belied as well by the debates in the Constitutional Conventions.

The challenge to Mr. Perez's candidacy was that he had not practiced law in Maryland for ten years. The focus on his not being admitted to the Maryland Bar for that period was part of the argument by Abrams that Perez had not lawfully practiced law here, for, except to the extent that a person is permitted by Federal law to appear in Federal courts and before Federal agencies without being admitted to the Bar of the State in which such appearances are made or is admitted *pro hac vice* to participate in a particular case, one must ordinarily be admitted to the Bar of Maryland by this Court before he or she may lawfully practice law here. That Mr. Perez had not been admitted to practice for the requisite ten years is strong evidence that he had not, in fact, practiced law here for that period.

Chief Judge Bell correctly concludes that the two go together; the Constitution anticipates that a candidate for Attorney General will have lawfully practiced law in Maryland for ten years, and that necessarily requires that the candidate have been admitted to practice here for that period. Because the condition of eligibility is that the candidate have practiced law, and because the sole challenge to Mr. Perez's candidacy is that he had not done so, it is necessary that this Court examine and resolve whether he engaged in lawful practice in Maryland for that period. Merely holding that Mr. Perez had not been admitted for ten years does not answer the question presented and therefore does not adequately or properly decide the case.

Judge Eldridge suggests, without any support, that a ten-year practice requirement may create Federal Constitutional issues because it discriminates against persons in Federal Government employment. I am not aware that the Supreme Court has ever held, or even intimated, that a State could not impose such a requirement for its chief legal officer, chosen to advise and represent the State and its officials and agencies, but even if such a requirement *did* raise such issues, they would be raised as well by a requirement that the person practice law here, or even be admitted to practice law here, for one year. The conjured ghost of a Federal issue is, to me, the reddest of red herrings. If the General Assembly believes that the requirement should be changed—that ten years is too long or that "practiced law in this State" should be better defined—it may propose to the People an appropriate amendment to Article V, § 4.

Concurring Opinion by HARRELL and GREENE, JJ.

Concurring Opinion by HARRELL and GREENE, JJ.

We agree generally with Parts I and II of Judge Eldridge's concurring opinion. Mr. Perez failed to satisfy the threshold requirement of Art. V, Sec. 4 of the Maryland Constitution in that he had not been admitted to the Bar of Maryland for at least ten years. That is as far as the Court need (and ought) go in order to decide the present case. The criterion that is dispositive of this matter is thus straightforward and easy for all to understand. The State Board of Elections may administer such a requirement by reference to the objective Bar admission records of this Court.